**In re the Marriage of Claer–Marie HARRIS, Appellant–Respondent,**

v.

**Mark T. HARRIS, Appellee–Petitioner.**

No. 64A05–0307–CV–318.

Court of Appeals of Indiana.

Dec. 19, 2003.

Transfer Denied March 11, 2004.

Debra Lynch Dubovich, Levy & Dubovich, Highland, IN, Attorney for Appellant.

Steven L. Langer, Jennifer E. Davis, Langer & Langer, Valparaiso, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

### STATEMENT OF THE CASE

Claer–Marie Harris (Claer–Marie) appeals the trial court's modification of Mark T. Harris' (Mark) child support obligation.

We affirm in part, reverse in part, and remand.

## ISSUES

Claer–Marie raises four issues upon appeal, which we restate as follows:

1. Whether the trial court erred in modifying Mark's child support obligation retroactively to the filing date of April 10, 2001, when a petition to transfer was still pending before the Indiana Supreme Court regarding the issue of child support and the case had not yet been certified back to the trial court;

2. Whether the trial court erred in finding a substantial change of circumstances in Mark's situation, resulting in a modification of his child support obligation;

3. Whether the trial court erred in using net income when calculating Mark's income for child support purposes; and

4. Whether the trial court erred in awarding Mark the right to claim the minor children as tax dependency exemptions for federal and state income tax purposes.

## FACTS AND PROCEDURAL HISTORY

Mark and Claer–Marie were married November 18, 1989. They had two children, J.H. and K.H., born in 1992 and 1996, respectively. On January 29, 1999, Mark filed a Petition for Dissolution of Marriage. Following a hearing, the trial court issued a Dissolution Decree on December 3, 1999, and awarded the parties joint legal custody of the children, with Claer–Marie as the primary custodian. The trial court ordered Mark to pay child support in the amount of $330.00 weekly, plus 15% of any income he received in excess of $156,000.00 per year. The trial court further ordered Mark to make the mortgage payments on the marital residence until it could be sold. The property award specified that Mark would receive 35% of the profits from the sale of the marital residence whereas Claer–Marie would receive 65%. Mark filed a Motion to Correct Error, which the trial court denied.

In March 2000, following this denial, Mark appealed the trial court's decree. On July 31, 2000, in a memorandum decision, this court affirmed the ruling of the trial court and remanded the case to the lower court to issue payment guidelines regarding the 15% over $156,000.00 per year. On November 29, 2000, Mark subsequently filed a Petition for Transfer. On April 11, 2001, our Supreme Court denied transfer.

On April 10, 2001, one day before our Supreme Court's denial of transfer, Mark filed a Supplemental Petition to Modify Child Support with the trial court. On April 16, 2001, the case was certified back to the trial court. On April 23, 2001, the trial court set all pending matters for a hearing. On February 20, 2002, the trial court conducted an evidentiary hearing on Mark's Supplemental Petition to Modify Child Support. On April 30, 2002, the trial court modified Mark's support obligation by its Order which states, in pertinent part, as follows:

"1. That there have been substantial and continuing changes in the circumstances of both parties, such that the existing order is no longer reasonable. [Claer–Marie] now has regular employment at a substantial salary, working out of her home. [Mark] lost his employment; successfully sued his former employer, and relocated to Colorado, where he again enjoys a very lucrative job.

2. Previously, [Mark] received bonuses through his employment. As these were irregular in amount and frequency, the trial court treated the payments as 'irregular income' as that is discussed in the guidelines. Such bonuses are no longer a regular part of [Mark]'s income. In fact, [Mark] has been required to invest some $250,000.00 into his current business.

3. The court finds that [Mark]'s modification petition is well[ ]taken and should be granted. [Mark]'s calculations have been adopted by the court as reasonable and fully supported by the evidence. From April 10, 2001, through September, 2001, [Mark] should have paid $743.41 per week. For the rest of 2001, he should have paid $526.75 per week; and for 2002 his obligation is found to be $474.05 per week. (See [Mark]'s Exhibits 7, 8 and 9 which are attached hereto and incorporated by reference herein.)

4. It is specifically found that the monies recovered by [Mark] from the lawsuit against his former employer are not income for child support purposes. It was generous, though not unreasonable, for [Mark] to include the net available money in his earnings calculations.

5. In addition to his ten percent (10%) regular visitation credit, [Mark] should also enjoy a thirty-three percent (33%) abatement of his child support obligation when he has both children for more than seven (7) days. [Mark] could reasonably argue for a downward deviation from the guideline support amount. [Claer–Marie] previously expressed an intent to relocate to remain reasonably near [Mark]. After he moved to Colorado, [Claer–Marie] apparently changed her mind. [Mark] now incurs very large expenses to exercise his parenting time. Fortunately, he is financially able to travel here frequently and does so.

6. As to tax exemptions, neither party is taxed at the base rate as contemplated by the guidelines. The guidelines worksheets indicate that [Mark]'s income share is between 83% and 88% of the total. It is fair to assume, however, that more than 13% of [Claer–Marie's] income goes to the support and care of the children. [Claer–Marie] claimed both children as dependents in 2001 and also filed as head of household.

Given the amount of support paid by [Mark] in 2002, as well as the economic benefit to him in claiming the children, [Mark] should have the opportunity to claim both children as dependents for tax year 2002. [Claer–Marie] is ordered to effect the release of the exemptions by delivering I.R.S. Form 8332 within thirty (30) days.

For tax years after 2002, it is reasonable that [Mark] be permitted to claim [J.H.] and [Claer–Marie] should claim [K.H.] absent further order of court. [Claer–Marie], of course, may continue to file as head of household."

Appellant's App. at 5–6.

Claer–Marie now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■■■ In the present case, the trial court sua sponte entered findings of fact and conclusions of law. When the trial court enters such findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issues upon which the court has not found. *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1214–15 (Ind.Ct. App.2002). Thus, in reviewing this judg-

ment, we must apply a two-tiered standard. *See Carmichael v. Siegel,* 754 N.E.2d 619, 625 (Ind.Ct.App.2001). First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Scoleri,* 766 N.E.2d at 1215. In deference to the trial court's proximity to the issues, we will reverse a judgment only when it is shown to be clearly erroneous. *Id.* A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. *Id.* However, although we defer substantially to findings of fact, we do not do so to conclusions of law. We evaluate questions of law de novo and owe no deference to a trial court's determinations of such questions. *Carmichael,* 754 N.E.2d at 625.

## I. *Jurisdiction of the Trial Court*

▇▇ As we stated above, because a jurisdictional matter involves a question of law, we will review de novo with no deference afforded to the decision of the trial court. *See id.* Claer–Marie contends that because the issue of child support was pending in a Petition to Transfer before our Supreme Court, any action taken before the trial court was void for lack of jurisdiction. Specifically, she asserts that at the moment Mark perfected his appeal on March 22, 2000, the entire cause was removed from the trial court. By requesting the trial court now to rule again on the appealed issue of child support, Mark is not raising an independent, separate, and distinct issue from the questions previously raised upon appeal. Therefore, Claer–Marie alleges that any action taken by the

trial court in the same case is void for lack of jurisdiction.

Conversely, Mark first claims that his Petition to Modify constitutes a separate and distinct cause of action over which the trial court can assume jurisdiction despite the pending appeal. Alternatively, he contends that because the trial court refrained from taking any action until our Supreme Court re-certified the case to the lower court, the trial court possessed jurisdiction to modify the child support at the time it chose to take action on the petition.

▇▇ As we have recognized before, the terms "void" and "voidable" are frequently used interchangeably, without due regard for the technical difference between their meanings. *See Trook v. Lafayette Bank and Trust Co.,* 581 N.E.2d 941, 944 (Ind.Ct.App.1991).

> *"Void* in the strict sense means that an instrument of transaction is nugatory and ineffectual so that nothing can cure it; *voidable* exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it."

BLACK'S LAW DICTIONARY 812 (abridged 5th ed. 1983). "Void" therefore may only be properly used when the action or subject matter it describes is of no effect whatsoever, and is incapable of confirmation or ratification. *Trook,* 581 N.E.2d at 944. "Voidable," on the other hand, describes an action or subject matter which nonetheless operates to accomplish the thing sought to be accomplished, until the fatal flaw is judicially ascertained and declared. *See id.*

▇▇ Nowhere is the distinction between "void" and "voidable" more clearly brought into focus than in the area of jurisdiction. There are three jurisdictional elements in every action: 1) jurisdiction of the subject matter, 2) jurisdiction of the

person, and 3) jurisdiction of the particular case. *See id.* Jurisdiction of the particular case comprises of " 'the right, authority, and power to hear and determine a *specific* case within that class of cases over which a court has subject matter jurisdiction.' " *Harp v. Indiana Dep't of Highways*, 585 N.E.2d 652, 659 (Ind.Ct.App. 1992) (*quoting City of Marion v. Antrobus*, 448 N.E.2d 325, 329 (Ind.Ct.App.1983)). A judgment rendered by a court without jurisdiction to hear the particular case is voidable because the jurisdictional defect is waivable if not attacked by a timely appeal. *See Trook*, 581 N.E.2d at 944.[1]

In the instant case, Mark filed his Petition to Modify his child support obligation while the judgment construing the original child support obligation was pending upon appeal. Generally, once an appeal is perfected, the trial court is divested of jurisdiction to alter or amend the judgment. *Elbert v. Elbert*, 579 N.E.2d 102, 114 (Ind.Ct.App.1991). Mark's appeal was perfected on March 22, 2000, pursuant to Indiana Appellate Rule 8. Before our Supreme Court decided the appeal by denying transfer, Mark filed the Petition to Modify his child support obligation with the trial court.

Our research did not reveal any case on point regarding premature filings before the trial court; rather most cases deal with premature filings of praecipes or premature filings of applications for review by a full administrative board. Thus, in *Haverstick v. Banat*, we determined that a premature filing of a praecipe was simply a defect in form which was capable of being cured. 165 Ind.App. 275, 280, 331 N.E.2d 791, 794 (1975). Because the prematurely filed praecipe was considered to be continuing in nature, it was in effect

when the motion to correct error was filed and was subsequently denied. *Id.* Based upon this reasoning, we concluded in *Haverstick* that while a premature filing is a procedural irregularity, it had not been demonstrated that the substantial rights of any party were adversely affected thereby. *Id.* We followed *Haverstick* when called upon to determine whether a premature filing of an application for review by a full Board forfeited a claimant's right to administrative review. *Jackson v. Cigna/Ford Elecs. & Refrigeration Corp.*, 677 N.E.2d 1098, 1102 (Ind.Ct.App.1997). Again, we held that because this premature filing did not adversely affect the substantial rights of either party, the claimant's right to administrative review was not forfeited. *Id.*

In keeping with the rationale of both *Haverstick* and *Jackson*, we conclude that the premature filing of Mark's Petition to Modify child support was a procedural irregularity, capable of being cured. Here, the record indicates that Mark filed his petition on April 10, 2001. Our Supreme Court denied the Petition to Transfer on April 11, 2001, with certification to the trial court on April 16, 2001. Mark's Petition to Modify was subsequently set for hearing on April 23, 2001, with an evidentiary hearing for February 20, 2002. Thus, it is clear from our review of the record that the trial court did not take any substantive action on the Petition to Modify until April 23, 2001. The mere filing of the petition with the clerk of the court did not serve to adversely affect the interests of Claer-Marie. *See Haverstick*, 165 Ind.App. at 280, 331 N.E.2d at 794. She was merely put on advance notice that a modification of Mark's child support obligation was being or would be pursued.

---

1. A different result may obtain when the matter is one of jurisdiction of the person. *Studham v. Whelchel*, 698 N.E.2d 1152 (Ind.1998) (holding that a judgment entered without jurisdiction of the person is void unless the jurisdictional defect has been waived).

Moreover, our reasoning today reinforces the public policy supporting child support obligations. It is well established in Indiana that the paramount concern of a court in any case involving child support must be focused upon the best interests of the child. *Fields v. Fields*, 749 N.E.2d 100, 104 (Ind.Ct.App.2001), *trans. denied.* In this regard, the trial court is afforded broad discretion in fashioning orders designed to ensure that child support be paid. *Id.* Therefore, allowing a premature filing in this case ensures a speedy review of the Petition to Modify child support and thus a continuance in the payment of appropriate child support.

Accordingly, we disagree with Claer-Marie that approval of this premature filing would lead to family law counsel " 'hedg[ing] their bets' and petitions to modify will be filed concurrently with all notices of appeal, so that a litigant can be afforded 'two bites of the apple.' " Appellant's Reply Brief at 12. Our limited holding today does not encourage the filing of pleadings in a trial court while an appeal is pending. To the contrary, the filing of any such premature pleading may subsequently be cured so long as the trial court does not invoke jurisdiction of the matter.

■■■ Based on the foregoing, we hold that the defect of the premature filing was cured because the trial court took no action and only considered the evidence after certification by our Supreme Court. *See Haverstick*, 165 Ind.App. at 280, 331 N.E.2d at 794. Furthermore, we fail to find evidence that this premature filing adversely affected the interests of either party. *See id.* Thus, after reviewing de novo, we conclude that once the matter was certified back to the trial court following denial of transfer, the trial court was vested with the jurisdiction to hear Mark's Petition to Modify his child support obligation. Moreover, a trial court has the discretionary power to make a modification for child support relate back to when the petition to modify is filed, or any date thereafter. *Haley v. Haley*, 771 N.E.2d 743, 752 (Ind.Ct.App.2002). Consequently, we find that the trial court was justified in modifying Mark's child support obligation retroactively.

However, we conclude that it was inappropriate for the trial court to order the modification retroactive to April 10, 2001, the date of Mark's premature filing. To so hold would be to validate without qualification the filing of the Petition to Modify as of that date. We are unwilling to do so. Rather, we hold that the modification may be made retroactive to April 16, 2001, when the case was certified from the Supreme Court back to the trial court. This holding comports with the principle that a support modification may be made retroactive "to the date the petition to modify is filed, *or any date thereafter.*" *Id.* (emphasis supplied).

## II. Substantial Change of Circumstances

Next, Claer-Marie argues that the trial court erred in awarding Mark a modification in his child support obligation. In particular, she claims that because there was no substantial and continuing change in his circumstances, the modification of his child support was not warranted.

■■■ We review the trial court's decision to modify a child support order under the clearly erroneous standard. *Hay v. Hay*, 730 N.E.2d 787, 792 (Ind.Ct.App. 2000). We will reverse the trial court's decision only where it is clearly against the logic and effect of the facts and circumstances that were before the trial court. *Id.* Child support awards may be modified only:

"(1) upon a showing of changed circumstances so substantial and continuing

as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed." Ind.Code § 31–16–8–1 (Burns Code Ed. Repl. 1997).

In the present case, the trial court based its conclusion to modify Mark's child support obligation upon the following findings of fact:

"1. That there have been substantial and continuing changes in the circumstances of both parties, such that the existing order is no longer reasonable. [Claer–Marie] now has regular employment at a substantial salary, working out of her home. Father lost his employment; successfully sued his former employer, and relocated to Colorado, where he again enjoys a very lucrative job.

2. Previously, [Mark] received bonuses through his employment. As these were irregular in amount and frequency, the trial court treated the payments as 'irregular income' as that is discussed in the guidelines. Such bonuses are no longer a regular part of [Mark]'s income. In fact, [Mark] has been required to invest some $250,000.00 into his current business." Appellant's App. at 5.

We have previously held that changes in the relative financial resources of both parents alone may be sufficient to modify a child support order. *Kirchoff v. Kirchoff,* 619 N.E.2d 592, 596 (Ind.Ct.App.1993), *disapproved on other grounds by Merritt v. Merritt,* 693 N.E.2d 1320 (Ind.Ct.App. 1998). The record reveals that since the entry of the dissolution decree, the employment situation of both parties has changed. The record shows that Mark was terminated by his original employer and has now accepted a position as the president of a startup company in Denver, Colorado. As part of this new employment, he was required to invest $250,000.00 of his personal finances in the company. Moreover, he stated that his compensation package now consists of an annual base salary of $325,000.00, with a car allowance of approximately $750.00 per month, and a bonus potential of $162,500.00 annually. Mark added that this is a discretionary bonus, which is not guaranteed and is based upon the performance of the venture. He indicated that he did not receive a bonus in 2002. Moreover, Mark testified that he was successful in suing his previous employer for wrongful termination. This lawsuit was settled for a total of $800,000.00. Although his new position is out of state, Mark admitted that the main motivation in accepting this position in Denver was Claer–Marie's original expressed intent of moving to Colorado.

On the other hand, the record supports that Claer–Marie now enjoys regular employment, working out of her home. She testified that she currently earns an annual salary of $90,000.00, with a monthly car allowance of $500.00.

Based on the foregoing, we find that the change in employment and financial situation of both parties presents a substantial and continuous change to justify a modification in Mark's child support obligation. *See* I.C. § 31–16–8–1(1); *Kirchoff,* 619 N.E.2d at 596. Therefore, we conclude

that the trial court's decision is not clearly against the logic and effect of the facts and circumstances that were before the court.

### III. Income for Child Support Calculation

Claer–Marie asserts that the trial court erred in using Mark's net income when calculating his weekly income for child support purposes. Specifically, she argues that the entire amount recovered by Mark under the wrongful termination suit should have been taken into account when determining his child support obligation.

■■■ "For the purposes of determining the parents' income in the child support guideline calculation, the definition of 'weekly gross income' is broadly defined to include not only actual income from employment, but also potential income and imputed income from 'in-kind' benefits." *Glover v. Torrence*, 723 N.E.2d 924, 936 (Ind.Ct.App.2000). However, the Commentary to the Indiana Child Support Guidelines cautions that determining income is more difficult when commissions and other forms of irregular income are involved. Ind. Child Support Guideline 3(B), cmt. 2; *Sims v. Sims*, 770 N.E.2d 860, 865 (Ind.Ct.App.2002). While irregular income is includable in the total income approach taken by the Guidelines, the determination is very fact sensitive. Ind. Child Support Guideline 3(A), cmt. 2(b). Moreover, the Guidelines urge judges and practitioners to be "innovative in finding ways to include income that would have benefited the family had it remained intact, but be receptive to deviations where reasons justify them." *Id.*

Thus, although the trial court might have appropriately considered the litigation settlement award in determining income, it was not required to do so. The ultimate impact upon the respective parties as to their gross income is a matter for the determination of the trial court in its discretion.

In the instant case, the trial court stated "3. The court finds that [Mark's] modification petition is well[ ]taken and should be granted. [Mark]'s calculations have been adopted by the court as reasonable and fully supported by the evidence. From April 10, 2001, through September, 2001, [Mark] should have paid $743.41 per week. For the rest of 2001, he should have paid $526.75 per week; and for 2002 his obligation is found to be $474.05 per week. (See [Mark]'s Exhibits 7, 8 and 9 which are attached hereto and incorporated by reference herein.)
4. It is specifically found that the monies recovered by [Mark] from the lawsuit against his former employer are not income for child support purposes. It was generous, though not unreasonable, for [Mark] to include the net available money in his earnings calculations." Appellant's App. at 5–6.

The record reflects that the trial court based its findings on Mark's calculations to modify his support obligation. At the hearing, Mark submitted worksheets determining his weekly gross income for 2001. In arriving at his weekly gross income, Mark included $325,000.00 as salary, $162,500.00 in bonuses, $9,000.00 as a car allowance, and $189,570.33[2] as monies

---

**2.** Mark's accounting of the settlement award is as follows:

Total Received:  $ 800,000.00

DEDUCTIONS
Taxes withheld  $ 105,000.00

| | |
|---|---|
| Federal taxes due but unpaid | $ 34,500.00 |
| Income taxes due | $ 214,500.00 |
| Monies invested in Prime Outdoor | $ 250,000.00 |
| Less attorneys fees | $ 6,429.67 |
| Monies available to Mark | $ 189,570.33 |

available to him from the lawsuit. Appellant's App. at 9. The court considered the inclusion of this net available amount "generous, though not unreasonable." Appellant's App. at 6.

The nature of a settlement award is a one-time payment of money. As such, it has a single impact on an individual's financial circumstances and net worth. It is reasonable to state that the award would have ultimately benefited the children if the family had remained intact. *See* Ind. Child Support Guidelines 3(A), cmt. 2(b). Even then, the settlement award would only have been beneficial after the appropriate taxes were deducted. Furthermore, because during the dissolution of the marriage Mark was put on notice that his employment would be terminated, it is also reasonable to assume that a portion of the settlement award would go towards finding and acquiring new employment.

Therefore, we agree with the trial court that the gross amount of the settlement award was an irregular and non-guaranteed form of income, which the trial court, in its discretion, could exclude from its determination of gross income. *See Gardner v. Yrttima*, 743 N.E.2d 353, 359 (Ind. Ct.App.2001). Here, the trial court considered the settlement award and concluded that it was reasonable to include the net portion, as only that amount would have been available to the family.[3] This decision ensured that the children are given the support they need. Consequently, we find that the trial court's judgment in this regard is not clearly erroneous.

Appellee's App. at 52.

**3.** It appears clear that the trial court did not exclude the totality of the settlement award from its consideration and that in stating that "the monies recovered by [Mark] from the lawsuit ... are not income for child support purposes" the court was only referring to that

## IV. Tax Dependency Exemptions

Claer–Marie asserts that the trial court erred in awarding Mark the right to claim both children as tax dependency exemptions for federal and state income tax purposes. Specifically, she alleges that Mark failed to demonstrate the tax consequences to each parent of transferring the exemptions and the burden of proving how such a transfer would benefit J.H. and K.H. We agree.

▆ We note at the outset that 26 U.S.C. § 152(e) (2000) automatically grants a dependency exemption to a custodial parent of a minor child but permits an exception where the custodial parent executes a written waiver of the exemption for a particular tax year. Moreover, we have previously held that a trial court under certain circumstances may order the custodial parent to sign a waiver of the dependency exemption. *See Ritchey v. Ritchey*, 556 N.E.2d 1376, 1379 (Ind.Ct.App.1990). Furthermore, the Commentary to the Indiana Child Support Guidelines states that the Guidelines were developed without taking into consideration the award of the dependency exemption. *See* Ind. Child Support Guideline 6, cmt. Instead, courts are instructed to review each case on an individual basis. *See id.*

▆ Nonetheless, the Guidelines recommend that, at a minimum, the following five factors be considered in determining when to order a release of the exemptions:

"(1) the value of the exemption at the marginal tax rate of each parent;

portion of the award which would not have inured to the benefit of the family had the family remained intact. This places the court's reference to the reasonableness of Mark's inclusion of the net settlement award monies in his income calculation in proper perspective.

(2) the income of each parent;

(3) the age of the child(ren) and how long the exemption will be available;

(4) the percentage of the cost of supporting the child(ren) borne by each parent; and

(5) the financial burden assumed by each parent under the property settlement in the case." *Id.*

Taking into account those factors, a "trial court's equitable discretion should be guided primarily by the goal of making the maximum amount of support available for the child." *Lamon v. Lamon,* 611 N.E.2d 154, 159 (Ind.Ct.App.1993). In particular, the noncustodial parent bears the burden of demonstrating the tax consequences to each parent of transferring the exemption and how such a transfer would benefit the child. *Id.* Here, the trial court set forth the following findings as to the tax dependency exemption:

"6. As to tax exemptions, neither party is taxed at the base rate as contemplated by the guidelines. The guidelines worksheets indicate that [Mark]'s income share is between 83% and 88% of the total. It is fair to assume, however, that more than 13% of [Claer–Marie]'s income goes to the support and care of the children. [Claer–Marie] claimed both children as dependents in 2001 and also filed as head of household.

Given the amount of support paid by [Mark] in 2002, as well as the economic benefit to him in claiming the children, [Mark] should have the opportunity to claim both children as dependents for tax year 2002. [Claer–Marie] is ordered to effect the release of the exemptions by delivering I.R.S. Form 8332 within thirty (30) days.

For tax years after 2002, it is reasonable that [Mark] be permitted to claim [J.H.] and [Claer–Marie] should claim [K.H.] absent further order of court. [Claer–Marie], of course, may continue to file as head of household." Appellant's App. at 5.

The record shows that Mark testified to the level of his income and the amount spent on exercising his parenting time. He further admitted that his income would probably be too high in 2002 to even benefit by claiming the tax exemptions. On the other hand, the record is silent as to consequences of transferring the exemption from Claer–Marie to Mark and how such transfer would benefit the children. *See Lamon,* 611 N.E.2d at 159.

Therefore, we conclude that the record does not support the trial court's findings that it would be reasonable to re-allocate the tax dependency exemptions. *See Scoleri,* 766 N.E.2d at 1214. Consequently, we remand this case to the trial court to determine the allocation of the tax exemptions in light of the burden of proof as stated above.

*CONCLUSION*

Based on the foregoing, we find that the trial court was vested with the jurisdiction to hear and decide the merits of Mark's Petition to Modify his child support obligation. Furthermore, the trial court properly identified a substantial change of circumstances justifying a modification in the child support obligation. However, we remand with instructions to order the modification retroactive to April 16, 2001. Because of the irregular nature of the settlement award, we conclude that the trial court did not err in including only the net portion of this award in Mark's income. Since the record is devoid of evidence regarding the impact on transferring the tax dependency exemptions on both parties and the children, we remand the case to

the trial court for further determination in this regard.

The order of the trial court is affirmed in part, reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.

FRIEDLANDER, J., and DARDEN, J., concur.