In re the Marriage of Donna J.
MacLAFFERTY, Appellant–
Respondent,

v.

William P. MacLAFFERTY,
Appellee–Petitioner.

No. 49A04–0309–CV–491.

Court of Appeals of Indiana.

July 7, 2004.

Transfer Granted Sept. 29, 2004.

Bryan Lee Ciyou, Ciyou & Dixon, P.C.,
Indianapolis, IN, Attorney for Appellant.

Michael Cheerva, Phelps Fara Avery & Cheerva, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

William MacLafferty ("Father") filed a petition to modify his child support obligation and parenting schedule in Marion Superior Court. The trial court granted his petition and Donna MacLafferty ("Mother") appeals raising the following issues, which we restate as:

I. Whether Mother's increased income constitutes a changed circumstance so substantial and continuing as to make the terms of the existing child support order unreasonable;

II. Whether the trial court abused its discretion when it determined that the children's summer day camp was no longer a child care expense; and,

III. Whether the trial court erred when it modified Father's weeknight parenting time to allow Father to exercise that time on either Tuesday or Wednesday night with forty-eight hours advance notice to Mother.

We affirm.

### Facts and Procedural History

Mother and Father's marriage was dissolved in 1995. Physical custody of the parties' two minor children was awarded to Mother. In 1998, in an agreed entry filed by the parties, Father's child support obligation was calculated to be $406 per week. The parties also agreed that they would each pay one-half of the children's extracurricular activities. Appellee's App. p. 148. In 2001, Father requested a modification of child support, and on April 17, 2002, the trial court reduced Father's child

support obligation to $364 per week. However, the court ordered Father to pay additional child support in an amount equal to six percent of any annual bonus income received. Father was also awarded a twelve percent credit for visitation. Appellant's App. pp. 22–25.

On October 28, 2002, Father filed a petition to modify child support and the parenting schedule. Father alleged that his child support obligation should be reduced because there had been a substantial and continuing change of circumstances from the April 17, 2002 child support order due to an increase in Mother's income. Father also argued that the children's summer day camp should be treated as an extracurricular activity and not as a child care expense. With regard to parenting time, Father requested that his weeknight parenting time with the children be extended from 7:45 p.m. to 9:00 p.m. Finally, Father alleged:

> That Mother has established a pattern of frequent disregard for the letter or the spirit of the visitation/parenting guidelines currently in place between the parties and that the Petitioner/Father requests that the Court provide assistance and recommendations to Mother regarding the exercise of reasonable flexibility in the establishment of visitation schedules.

Appellant's App. p. 30.

Father also filed a motion for change of judge, which was granted, and Judge Patrick McCarty accepted jurisdiction of this case on December 4, 2002. A hearing was then held on April 14, 2003. At the hearing, Father presented evidence that Mother had obtained full-time employment and her weekly gross income had increased from $324 to $709. Father also argued that the children's summer day camp should no longer be considered a child care

expense, but an extracurricular activity. Tr. pp. 14–15. Mother asserted that the summer day camp was a necessary child care expense due to her full-time employment. Father submitted a child support worksheet on which he calculated his child support obligation to be $313 per week. Ex. Vol., Petitioner's Ex. 2. Father also requested that the court allow him to exercise his midweek parenting time on either Tuesday or Wednesday night because of personal conflicts in his schedule. Tr. pp. 5, 30–33, 53–54.

The trial court issued findings of fact and conclusions of law on July 10, 2003. With regard to the child support calculation, the trial court found that Mother's weekly gross income was $709 per week and that her overall household income had substantially increased. Appellant's App. pp. 11–12. The trial court also found that Father's wife has the ability to provide care for the children at no cost during the summer, and therefore, the children's summer day camp should be treated as an extracurricular expense. Appellant's App. p. 12. The trial court determined that "Mother's change to full-time employment and the increase in her income attributable thereto constitutes a substantial and continuing change of circumstances sufficient to find that the previous Court Order regarding Support and Visitation is now unreasonable." Appellant's App. p. 19. Accordingly, the trial court reduced Father's child support obligation to $313 per week and ordered the summer day camp expense to be shared equally by the parties beginning with the summer of 2004. Appellant's App. p. 19.

With regard to parenting time, the trial court found that "Father requires flexibility for his weekday visitation because he has activities on either Tuesday or Wednesday evenings, which require some scheduling changes so that he may have quality parenting time with the children." Appellant's App. pp. 12–13. Further, the court found that "Father's scheduling difficulties would be greatly resolved if he were allowed to choose which evening of the week that he could exercise his mid-week visitation." Appellant's App. p. 13. Therefore, the trial court ordered Father's mid-week parenting time to be on Tuesday or Wednesday nights "with the day to be decided upon by Father and that he shall provide Mother with at least forty-eight hours notice of his choice of day." Appellant's App. p. 19. Finally, the trial court extended Father's mid-week parenting time from 7:45 p.m. to 9:00 p.m. Mother now appeals. Additional facts will be provided as necessary.

## Standard of Review

Mother requested findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A),

> which prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly erroneous." The court on appeal is to give due regard to "the opportunity of the trial court to judge the credibility of the witnesses." When a trial court has made special findings of fact, as it did in this case, its judgment is "clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment."

*Dunson v. Dunson*, 769 N.E.2d 1120, 1123 (Ind.2002) (internal citations omitted).

## I. Modification of Child Support

Mother argues that Father failed to present evidence showing changed circumstances so substantial and continuing which would allow for modification of child

support,[1] and therefore, the trial court erred when it reduced Father's child support obligation from $364 to $313 per week. Father asserts that the trial court properly modified his child support obligation due to Mother's significant increase in income.

■ We review a trial court's decision to modify child support under the clearly erroneous standard and will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Harris v. Harris,* 800 N.E.2d 930, 938 (Ind.Ct.App.2003), *trans. denied.* Indiana Code section 31–16–8–1 provides that child support awards may be modified only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind.Code § 31–16–8–1 (1998). The petitioner bears the burden of proving a substantial change in circumstances justifying modification. *Weiss v. Frick,* 693 N.E.2d 588, 590 (Ind.Ct.App.1998), *trans. denied.*

In its findings of fact and conclusions of law, the trial court concluded, "Mother's change to full-time employment and the increase in her income attributable thereto constitutes a substantial and continuing change of circumstances sufficient to find that the previous Court Order regarding Support and Visitation is now unreasonable." Appellant's App. p. 19. Initially, we observe that when determining a parent's child support obligation, the trial court should consider the financial resources of both parents and the standard of living the children would have enjoyed had the marriage not been dissolved. Ind. Code § 31–16–6–1 (1998); Ind. Child Support Guideline 1 (2004).

The Indiana Child Support Guidelines provide that "[a] change in circumstances may include a change in the income of the parents, the application of a parenting plan, the failure to comply with a parenting plan or a change in the expense of child rearing specifically considered in the Guidelines." Child Supp. G. 4, cmt. Father notes that our courts have held that "changes in the relative financial resources of both parents alone may be sufficient to modify a child support order." Br. of Appellee at 7 (citing *Harris,* 800 N.E.2d at 938; *Kirchoff v. Kirchoff,* 619 N.E.2d 592, 596 (Ind.Ct.App.1993), *disapproved on other grounds by Merritt v. Merritt,* 693 N.E.2d 1320, 1324 n. 4 (Ind.Ct.App.1998), *trans. denied).*

In *Harris,* modification of child support was warranted where the evidence established that Father's employment was terminated, he obtained a new job in Colorado, and was required to invest $250,000 in the company. 800 N.E.2d at 938. Father's new compensation package consisted of a base salary of $325,000, a car allowance of $750 per month, and a potential for bonus income of $162,500 annually. *Id.*

---

**1.** Mother also argues that Father's child support obligation did not differ by more than twenty percent from the amount that would be ordered by applying the Child Support Guidelines. However, the trial court did not modify Father's child support under that provision of Indiana Code section 31–16–8–1; therefore, we do not address that argument in our resolution of this issue.

The record also established that Mother had obtained regular employment earning $90,000 annually with a monthly car allowance of $500. *Id.* Our court held that the "change in employment and financial situation of both parties presents a substantial and continuous change to justify a modification in" Father's child support obligation. *Id.* In *Kirchoff,* our court affirmed the trial court's modification of child support where Father's income had significantly declined and Mother's income had significantly increased. 619 N.E.2d at 595–96.

■ In this case, in less than one year, Mother's weekly gross income increased from $324 per week to $709 per week because she obtained full-time employment. Appellant's App. p. 25; Ex. Vol., Petitioner's Ex. 2. Father's weekly gross income also increased from $2287 per week to $2407 per week. Father offered an exhibit at the hearing showing a calculation of Mother's total household income for the previous four years and her estimated 2003 income utilizing Father's proposed reduction of his weekly child support obligation. The exhibit established that Mother's household income in 2002 was $42,949 and her estimated 2003 income would be $55,676 if Father's support were reduced to $313 per week. Ex. Vol., Petitioner's Ex. 8. However, we also note that while Mother's income increased substantially, her percentage share of the parties' total weekly income only increased by eleven percent.

Mother argues that the reduction in Father's child support obligation will "cause the children's lifestyle to erode in marked ways." Br. of Appellant at 21. In support of that argument, Mother cites to her own testimony where she stated that if Father's support obligation was reduced, she would likely have to eliminate certain items from her budget such as internet access or taking the children out to dinner. *Id.* (citing Tr. pp. 73–74). However, her testimony conflicts with Father's exhibit, which she did not object to at the hearing, demonstrating that her yearly household income will increase by more than $12,000 even if Father's child support obligation is reduced. Mother's argument amounts to a request to our court to reweigh the evidence and the credibility of the witnesses, which we will not do.

■ The Child Support Rules provide that "there shall be a rebuttable presumption that the amount of the award which would result from the application of the Indiana Child Support Guidelines is the correct amount of child support to be awarded." *See* Ind. Child Support Rule 2 (2004). Moreover, as we noted above, our courts have held that an increase in the parties' income may constitute a changed circumstance so substantial and continuing as to make the terms of the existing support order unreasonable. Under these facts and circumstances, where Mother's income more than doubled after she obtained full time employment, we conclude that the trial court's order reducing Father's child support obligation was not clearly erroneous.[2]

2. Our supreme court has advised judges that the Child Support Guidelines should not be treated as "immutable, black letter law." *Garrod v. Garrod,* 655 N.E.2d 336, 338 (Ind. 1995). "Rather, there are situations which call for flexibility and courts should 'avoid the pitfall of blind adherence to the [Guidelines'] computation for support without giving careful consideration to the variables that require changing the result in order to do justice' in such circumstances." *Id.* (citing Child Supp. G. 1, cmt.); *see also Summerville v. Summerville,* 679 N.E.2d 1344, 1347 (Ind.Ct.App. 1997). Despite our conclusion that the trial court's modification of Father's child support obligation was not clearly erroneous, we note that Father earns seventy-seven percent of the parties' total weekly gross income, and with

## II. Summer Day Camp

Mother also argues that the trial court abused its discretion when it found that the children's summer day camp "is no longer needed as a child care expense." *See* Appellant's App. p. 19. Father contends that child care is available at his home at no cost to be provided by his wife who does not work outside the home

■ Child Support Guideline 3(E) provides that child care costs incurred due to employment of the parents should be added to the basic child support obligation. "Such child care costs must be reasonable and should not exceed the level required to provide quality care for the children." Child Supp. G. 3(E)(1).

> Work-related child care expense is an income-producing expense of the parent. Presumably, if the family remained intact, the parents would treat child care as a necessary cost of the family attributable to the children when both parents work. Therefore, the expense is one that is incurred for the benefit of the child(ren) which the parents should share.

Child Supp. G. 3(E), cmt.

The trial court made the following findings with regard to the children's summer day camp:

> 16. Father's wife Alicia, is a homemaker and can provide care for the parties' children at no cost during the summer. The boys have a good relationship with their stepmother and enjoy being with their sisters[.] Spending time at Father's home during the summer would eliminate the need for the boys to attend summer camp for the six (6) week period that they have attended in the past. While Father believes that some summer camp attendance is beneficial, it is his opinion that the number of weeks should be limited and that cost should be treated as an extra-curricular expense and, thereby, eliminated from the child support calculation as a daycare expense.

> 18. Father is willing to assist with the necessary travel, accommodations and arrangements to assist in new summer camp and summer visitation schedules.

Appellant's App. p. 12. The trial court also issued the following conclusion of law:

> 5. The Court finds that the children's summer day camp is no longer needed as a child care expense and beginning with the summer 2004, shall be treated as an extracurricular activity. The cost shall be divided equally by the parties beginning with the summer of 2004.

Appellant's App. p. 19.

It is undisputed that Mother has obtained full-time employment, and therefore, during the summer when the children are not in school they require supervision. However, at the hearing, Father argued that child care is available in his home at no cost to be provided by his wife. We also note that during the summer of 2004, the children will be thirteen and eleven years old. At the hearing, Mother testified that their older son "wants to work" at the summer day camp during the summer of 2004. Father argues that if a child is old enough to work at the camp, then he is

---

bonus income, his yearly gross income exceeds $125,000. Further, Father's weekly gross income increased $120 from the previous April 17, 2002 reduction of his child support obligation. Ex. Vol., Petitioner's Ex. 2; Appellant's App. p. 25. In cases like the one before us, where there is a wide disparity in the parties' relative financial situations, we suggest that courts should be hesitant to reduce the child support obligation of the party with substantially greater financial resources, especially when, as here, the other party's earned income has increased from a level below the poverty line.

not in need of child care.[3] *See* Br. of Appellee at 10. Finally, the trial court did not order Mother to pay the full cost of the camp, but ordered the parties to share the cost equally. Under these facts and circumstances, we conclude that the trial court did not abuse its discretion when it determined that the summer day camp was no longer a necessary child care expense.

### III. Parenting Time

Mother argues that the trial court erred when it modified Father's parenting time to allow Father to choose either Tuesday or Wednesday night for his midweek parenting time with the children. Mother contends that Father's parenting time was modified not because it was in the children's best interests, but for the convenience of Father's schedule. Br. of Appellant at 27. Father asserts that it is in the children's best interests for Father to have parenting time with the children during evenings when he is not scheduled to be elsewhere.

■ Indiana Code section 31–17–4–2 provides that a trial court "may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." Ind.Code § 31–17–4–2 (1998). "[I]t is usually in a child's best interest to have frequent, meaningful, and continuing contact with each parent." Ind. Parenting Time Guidelines, Preamble (2004). Further, "[p]arents should be flexible in scheduling parenting time and should consider the benefits to the child of frequent, meaningful and regular contact with each parent and the schedules of the child and each parent." Ind. Parenting Time G. § I(C).

At the hearing, Father testified that initially he and Mother agreed that his midweek parenting time would occur on Wednesday nights. Tr. p. 29. However, in the Fall of 2002, Father asked Mother if he could change his midweek parenting time to Tuesday nights because his church choir practice was held on Wednesday nights. Mother would not agree to change Father's midweek parenting time to Tuesday, and therefore, Father took the children with him to choir practice. Tr. p. 30. Father also testified that during the summer, when he does not have choir practice, he is in a golf league on Tuesday nights. Tr. pp. 30–31. Therefore, Father made a request to modify his midweek parenting time so that he could choose either Tuesday or Wednesday night.

We agree with Father that it is in the children's best interests for Father to have parenting time with the children on evenings when he is able to spend meaningful, quality time with them. Further, Father's testimony regarding his activities suggests that his choice of day for his midweek parenting time will not alter between Tuesday and Wednesday on a weekly basis. Moreover, this flexible arrangement is consistent with the Indiana Parenting Time Guidelines. Accordingly, we conclude that the trial court's order giving Father the option of either Tuesday or Wednesday night parenting time is in the children's best interests, and therefore, was not clearly erroneous.

### Conclusion

The trial court did not err when it reduced Father's child support obligation because Mother's increase in income constitutes a changed circumstance so substantial and continuing as to make the terms of the April 17, 2002 child support

---

**3.** However, it is unclear from the record before us what "work" their son would be performing and whether such work would be voluntary or if their child would be compensated.

order unreasonable. Also, the trial court did not abuse its discretion when it determined that the children's summer day camp was no longer a necessary child care expense. Finally, the trial court's modification of Father's midweek parenting time was in the children's best interests.

Affirmed.

BARNES, J., and CRONE, J., concur.