# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JOHN QUIRK**
Muncie, Indiana

ATTORNEY FOR APPELLEE:

**PAUL E. BAYLOR**
Anderson, Indiana



FILED

Jan 15 2013, 9:48 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

STEVEN ENGELKING,            )
                             )
    Appellant-Petitioner,    )
                             )
         vs.             )    No. 18A02-1206-DR-495
                             )
AMY ENGELKING,               )
                             )
    Appellee-Respondent.     )

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable John M. Feick, Judge
Cause No. 18C04-1010-DR-146

**January 15, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

Steven Engelking ("Father") appeals the trial court's dissolution decree finding that he was the parent of two children born during his marriage to Amy Engelking ("Mother") and was required to pay child support.

We affirm.

## ISSUE

Whether the trial court erred in determining that Father should pay child support as the parent of two children conceived through artificial insemination during his marriage to Mother.

## FACTS

The facts most favorable to the judgment disclose that Father and Mother were married in 2001. Subsequently, Father and Mother had a discussion about having children, and Father responded to the discussion by consulting a doctor to determine whether a prior vasectomy could be reversed. The doctor told Father and Mother that a successful reversal was unlikely. As a result, the couple began investigating the possibility of artificial insemination.

A longtime friend of Mother's became aware of the situation and told Mother that her husband, S.P., would provide the sperm for the artificial insemination. Mother was initially skeptical but changed her mind when Father encouraged the use of S.P.'s sperm because they looked alike and shared similar "characteristics and morals." (Tr. 13). Father and Mother subsequently arranged for S.P. to be the sperm donor.

Father and Mother conducted an internet search of sperm banks, and Mother purchased paraphernalia from a sperm bank to facilitate the insemination process. With Father's approval, Mother obtained a sperm sample from S.P. and used a syringe to inject the sperm into her vagina. The procedure resulted in the birth of a male child in 2004.

Father supported the child, holding the child out to the world as his own. Later, Mother discovered that Father had kept the paraphernalia from the sperm bank because he was concerned that his son would be an only child. Soon thereafter, Father and Mother discussed artificial insemination with S.P. and his wife. Mother again used a syringe to insert S.P.'s sperm into her vagina. This procedure resulted in the 2006 birth of a female child.

Again, Father supported both children and treated them as if they were his biological children. After he and Mother separated in 2009, Father exercised equal time visitation with the children. This visitation involved several overnight visits per week. Father continued to support the children by paying for daycare, clothing, and sports fees.

On October 10, 2010, Father filed a verified petition for dissolution of the marriage. In the petition, he stated that "two children were born to [Mother] during the marriage . . . . The children are not the biological children of [Father]." (App. 8). Nevertheless, Father continued to exercise visitation rights until February of 2012. On May 15, 2012, the trial court held a final hearing on the petition and found, among other things, that the children "were acknowledged by [Father] as his children, he supported said children, and he consented to the procedure by which they were created. That said

3

children are, by all rights and purposes, legally the children of [Father]." (App. 29). The trial court ordered joint legal custody, naming Mother as the physical custodian and giving Father "proper visitation with a minimum of the co-parenting guidelines." (App. 30). The court also ordered Father to pay child support.

## DECISION

Father contends the trial court erred in determining that the children are products of the marriage and that he has a duty to pay child support. He questions the validity of the trial court's findings and conclusions.

The trial court entered findings of fact and conclusions of law sua sponte. In such cases, the specific findings control as to the issues they cover, while a general judgment standard applies to any issues upon which the court has not made a finding. *Harris v. Harris*, 800 N.E.2d 930, 934 (Ind. Ct. App. 2003), *trans. denied.* Thus, in reviewing the judgment, we must apply a two-tiered standard. *Id.* First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* In deference to the trial court's proximity to the issues, we will reverse a judgment only when it is shown to be clearly erroneous. *Id.* In determining the validity of the findings or the judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.* We will not reweigh the evidence or assess the credibility of the witnesses. *Id.* We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions. *Id.*

Father argues that neither child was a "child of the marriage" under the Dissolution of Marriage Act. *See* Ind. Code § 31-9-2-13(a)(2) (stating that a "child" of the marriage includes "[c]hildren born or adopted during the marriage of the parties"). He cites *Levin v. Levin*, 645 N.E.2d 601, 605 (Ind. 1999) for the proposition that a child conceived through artificial insemination is a child of the marriage only when both parties knowingly and voluntarily consent to the artificial insemination. He maintains that there is insufficient evidence to support a conclusion that he knowingly and voluntarily consented to the artificial inseminations.

In *Levin*, the Levins, after discovering that the husband, Donald, was sterile, decided that the wife, Barbara, should be artificially inseminated. Donald supported the child and "held him out as his own" for ten years. *Id.* at 603. After dissolution of the marriage, Donald terminated his personal relationship with the child but continued to pay child support. Subsequently, Donald petitioned the trial court to vacate the child support order on the basis that the child was not his biological son. The trial court denied the petition, and this Court affirmed. Our Supreme Court accepted transfer, summarily affirmed this Court's opinion, and affirmed the trial court's judgment. In so doing, it stated that this Court "accurately analogized this situation to a child adopted during the marriage by agreement of the husband and wife. We thus hold that, as in the case of adoption, where the husband and wife knowingly and voluntarily consent to artificial insemination, the resulting child is a child of the marriage." *Id.* at 604 (citation omitted).

Here, Mother testified that Father knew of the artificial inseminations that led to the conception of both children, helped her conduct research to determine the paraphernalia used to facilitate the first artificial insemination, talked with S.P. and his wife about the use of S.P.'s sperm as a component of both inseminations, and consented to both inseminations. She also testified that Father saved the paraphernalia for the second insemination so that the first child would not be an only child. She further testified that Father supported the children during the marriage, exercised his visitation rights during most of the lengthy period between the filing of the petition for dissolution and the final hearing, and claimed the oldest child on his tax return.

Father is asking us to disregard Mother's testimony and credit his testimony that he did very few of the things attributed to him by Mother. Thus, he argues that he did not knowingly and voluntarily consent to the artificial inseminations. Assigning credibility is not our function, and we reject Father's invitation to do so. The trial court's findings are supported by Mother's testimony, and the findings support the trial court's ultimate conclusion that each child was a child of marriage. Accordingly, both Father and Mother "have an obligation to support the child[ren]." *See Levin*, 645 N.E.2d at 605.[1]

---

[1] Father also cites *In re Paternity of M.F.*, 938 N.E.2d 1256, (Ind. Ct. App. 2010), *trans. denied*, for the proposition that a procedure by which a mother is inseminated is not a true artificial insemination unless the semen transferred to the mother is first provided to a physician. In the case, the Court examined the public policy impact of a contract between a mother in a same sex relationship and a donor whereby the donor is absolved of any obligation to pay child support. The Court noted that viability of the contract depends on the manner in which insemination occurred, and it held that a physician's intermediary role acts as a safeguard against a "spur-of-the moment" contract between the mother and the sperm donor. *Id*. at 1261. The case is inapplicable where, as here, the issue is whether the father in a marriage may avoid supporting children born to the father's spouse during that marriage.

Affirmed.

ROBB, C.J., and MAY, J., concur.