941 N.E.2d 1107 (2011)
In re the MARRIAGE OF J.S. AND J.D.
J.S., C.H., and M.H., Appellants-Respondents,
v.
J.D., Appellee-Petitioner.
No. 29A05-1004-DR-204.
Court of Appeals of Indiana.
February 7, 2011.
*1108 Monty K. Woolsey, Jonathan R. Deenik, Cross, Woolsey & Glazier, Carmel, IN, Attorneys for Appellant.
Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, P.C., Indianapolis, IN, Attorney for Appellee.

OPINION
BRADFORD, Judge.
In this appeal from a dissolution action, Appellants-Respondents J.S., who is A.H.'s biological mother, and C.H. and M.H., who are A.H.'s adoptive parents, challenge the trial court's granting a visitation petition in favor of A.H.'s biological father, Petitioner-Appellee J.D. Upon appeal, the Respondents challenge the trial court's judgment on a number of grounds, one of which we find dispositive: whether a biological parent who has consented to the adoption of his child but who wishes to petition for visitation must follow the procedures outlined in Indiana Code section 31-19-16-2 (2009). Concluding that section 31-19-16-2 is the exclusive means for asserting visitation rights, and that J.D. did not follow the procedures listed therein, we reverse and remand with instructions to vacate the trial court's grant of visitation.

FACTS AND PROCEDURAL HISTORY
J.D. and J.S. are the biological parents of A.H., who was born on January 23, 2002. At the time of A.H.'s birth, J.D. and J.S. were in high school and unmarried. A.H. was born with a congenital heart defect requiring medical care and expense. J.S.'s parents and A.H.'s maternal grandparents, C.H. and M.H., adopted A.H. on February 6, 2002, and provided medical insurance and childcare for her, along with other support, financial and otherwise. J.D. does not dispute that he consented to A.H.'s adoption by C.H. and M.H. He contends, however, that he did so because of C.H. and M.H.'s ability to provide insurance and their alleged reassurances that he would continue to be "daddy" to A.H.
Following A.H.'s birth, J.S. lived with her at C.H. and M.H.'s home. J.D. visited A.H. there. A.H. was included in both J.S.'s and J.D.'s family celebrations, and she referred to them as "Mom" and "Dad," respectively. According to J.D., he did not have to ask for permission from C.H. and M.H. to take A.H. various places.
J.D. and J.S. were married in May 2005. Following their marriage, J.D. and J.S. resided with A.H. in C.H. and M.H.'s home for some months. Thereafter, C.H. and M.H. built a home and rented it to J.D. and J.S., who moved there with A.H. J.D. and J.S. had a second child, E.D., on January 18, 2007.
On July 16, 2007, J.D. and J.S. filed a petition to adopt A.H., alleging that they had placed A.H. for adoption with C.H. and M.H. because they were not in a position to provide for her but that their situation had changed dramatically. In an affidavit attached to the petition, M.H. and C.H. consented to this adoption. The adoption was never finalized.
J.D. and J.S. experienced difficulties in their marriage. In approximately August 2008, J.S. filed a dissolution action against J.D. J.S. did not name A.H. in the dissolution petition. At some point following the dissolution petition but before the dissolution decree was entered, the adoption petition was dismissed without the knowledge or consent of J.D.
During the pendency of the dissolution proceedings, J.D. exercised regular visitation with A.H. at the same time he exercised visitation with E.D. At some later point, however, M.H. restricted J.D.'s access to A.H. and threatened to terminate it if J.D. did not sign the divorce decree.
*1109 The marriage of J.D. and J.S. was dissolved on March 10, 2009, pursuant to a settlement agreement. The settlement agreement did not mention or provide for J.D. to have visitation with A.H. Nevertheless, J.D. continued to exercise visitation with A.H., which generally occurred when he visited with E.D. There were times, however, when J.D.'s visitation with A.H. was terminated for certain periods of time.
J.S. began dating B.S. in August 2008 and married him in 2009. Disputes regarding J.D.'s visitation with A.H. were partly attributable to B.S.'s participation in the exchanges. Shortly after J.S. and B.S. married, J.S. and B.S. filed a petition for the adoption of A.H., to which C.H. and M.H. consented. This petition was still pending at the time of the trial court's judgment in the instant action. J.D.'s visitation with A.H. has been limited since J.S. and B.S.'s marriage.
On August 10, 2009, J.D. filed a petition to establish visitation with A.H. On that same date, J.D. additionally filed a petition for joinder of necessary parties, contending that C.H. and M.H. were necessary parties to his visitation petition. On August 13, 2009, J.S. filed a motion to dismiss J.D.'s petitions on the grounds that the trial court lacked authority in J.D. and J.S.'s dissolution proceedings to issue orders pertaining to A.H., who was the legal adoptee of C.H. and M.H.
Following a November 24, 2009 hearing, the trial court granted J.D.'s petition to join C.H. and M.H. as necessary parties. The trial court held a December 30, 2009 hearing on the merits of the visitation petition. On March 30, 2010, the court issued a judgment granting J.D.'s visitation petition on the grounds that, pursuant to Collins v. Gilbreath, 403 N.E.2d 921 (Ind.Ct.App.1980), J.D. qualified as a third-party nonparent custodian whose court-ordered visitation with A.H. was in her best interests.[1] The trial court specifically declined to address the merits of the adoption decree, which was apparently the subject of a separate pending action, and specifically stated that its decision had no effect on the decree's existence. This appeal follows.

DISCUSSION AND DECISION
Upon appeal, Respondents challenge the trial court's grant of visitation. Among other grounds, Respondents argue that J.D. is limited to the procedures set forth in Indiana Code section 31-19-16-2 to establish postadoption visitation with A.H.

I. Standard of Review
In the instant case, the trial court entered findings of fact and conclusions thereon sua sponte. In such cases, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issues upon which the court has not found. Harris v. Harris, 800 N.E.2d 930, 934 (Ind.Ct.App. 2003), trans. denied. Thus, in reviewing this judgment, we must apply a two-tiered standard. Id. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. Id. In deference to the trial court's proximity to the issues, we will reverse a judgment only when it is shown to be clearly erroneous. Id. A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. Id. In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable *1110 inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. Id. However, although we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We evaluate questions of law de novo and owe no deference to a trial court's determinations of such questions. Id.

II. Analysis
There is no dispute that A.H. is J.D.'s biological child and that she was adopted by C.H. and M.H. with J.D.'s stated consent. Indiana Code section 31-19-16-2, which provides means for a birth parent to obtain postadoption visitation privileges, states as follows:
A court may grant postadoption contact privileges if:
(1) the court determines that the best interests of the child would be served by granting postadoption contact privileges;
(2) the child is at least two (2) years of age and the court finds that there is a significant emotional attachment between the child and the birth parent;
(3) each adoptive parent consents to the granting of postadoption contact privileges;
(4) the adoptive parents and the birth parents:
(A) execute a postadoption contact agreement; and
(B) file the agreement with the court;
(5) the licensed child placing agency sponsoring the adoption and the child's court appointed special advocate or guardian ad litem appointed under IC 31-32-3 recommends to the court the postadoption contact agreement, or if there is no licensed child placing agency sponsoring the adoption, the county office of family and children or other agency that prepared an adoption report under IC XX-XX-X-X is informed of the contents of the postadoption contact agreement and comments on the agreement in the agency's report to the court;
(6) consent to postadoption contact is obtained from the child if the child is at least twelve (12) years of age; and
(7) the postadoption contact agreement is approved by the court.
The trial court specifically indicated that its judgment did not affect the adoption decree, and proceedings relating to the adoption and its validity were a separate action. Accordingly, there is no dispute that the court's grant of visitation was not made pursuant to the above procedures.
Yet the plain language of section 31-19-16-2 clearly applied. When interpreting a statute, the first step is to determine whether the legislature has spoken clearly and unambiguously on the point in question. City of N. Vernon v. Jennings NW Regional Utils., 829 N.E.2d 1, 4 (Ind. 2005). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Id. Clear and unambiguous statutes leave no room for judicial construction. Id. In the instant case, A.H. was adopted, her birth parent was J.D., and J.D. wished to establish postadoption visitation. These are the very circumstances for which section 31-19-16-2 provides.
Moreover, this court has previously concluded, in In re Visitation of A.R., 723 N.E.2d 476, 479 (Ind.Ct.App.2000), that section 31-19-16-2 is the exclusive means for seeking relief. A.R. involved a birth parent who, like J.D., maintained contact with a biological child after consenting to the child's adoption, was subsequently denied contact, and sought to establish visitation.[2] As in the instant *1111 case, the biological parent in A.R. petitioned for postadoption visitation as a nonparent third party and did not follow the procedures in section 31-19-16-2. Id. at 478. The A.R. court rejected the parent's petition. Id. at 479. In doing so, the A.R. court looked to the legislative history of section 31-19-16-2, which demonstrated that the General Assembly had intended to create a very "specific and significant exception to the general rule of total divestiture of a birth parent's rights, while at the same time demonstrating that the post-adoption rights of birth parents differ significantly from those of other parties." Id. Based upon this history, the A.R. court concluded that section 31-19-16-2 was the exclusive means by which a birth parent could acquire postadoption visitation rights. Id. In reaching this conclusion, the A.R. court specifically rejected the argument that the birth parent should be permitted to petition for visitation as a nonparent third party. See id. ("[W]e do not believe that the legislature intended that a birth parent's failure to comply with Ind. Code § 31-19-16-2, resulting in the forfeiture of his or her newly-created right to post-adoption contact, should subsequently act as a means for that birth parent, under the guise of a non-parent third party, to circumvent the statute's requirements.").
Here, the judgment at issue grants J.D. visitation pursuant to Collins, which is not an available avenue of relief given the clear statutory procedures for postadoption visitation by a birth parent. See A.R., 723 N.E.2d at 479. We must therefore vacate that visitation order. In reaching this holding, we are mindful that the trial court, in assessing the facts, believed A.H.'s best interests would be served if she maintained her relationship with J.D., whom she has known to be her father. To the extent the visitation J.D. seeks with A.H. is available, it must be pursued under section 31-19-16-2.
The judgment of the trial court is reversed, and the cause is remanded with instructions to vacate the visitation order.
KIRSCH, J., concurs.
CRONE, J., concurs in result with opinion.
CRONE, Judge, concurring in result.
In decisions involving visitation, the best interests of the child are the primary consideration. Matter of Paternity of Joe, 486 N.E.2d 1052, 1055 n. 1 (Ind.Ct. App.1985). In this case, a conscientious trial judge painstakingly considered the evidence presented by both sides and concluded that granting J.D.'s petition to establish visitation with his biological daughter, A.H., was in A.H.'s best interest. This conclusion was partly based on the court's determination that J.D. had "acted in the role of a defacto parent" after A.H. was adopted by her maternal grandparents and had "developed a father-daughter relationship" with her. Trial Court's Order at 8. J.D. married A.H.'s mother, J.S., and fathered A.H.'s sibling, E.D. The trial court found that J.D.'s custodial relationship with A.H. "continued unabated" until he separated from J.S. and that he continued to have "regular contact" with A.H. until J.S. married her current husband. Id. at 9. All of this occurred after J.D.'s in-laws adopted A.H. in order to provide medical insurance and health *1112 care for her. The court found that it would not be in A.H.'s best interest "to continue as the parties have in the past without an enforceable definition of [J.D.'s access rights] because such a practice has resulted in [A.H.] being exposed to disagreements in her presence between folks that she holds dear." Id. at 11. The court further found that the potential for A.H. to experience a sense of abandonment by J.D. "is made more poignant by the fact that her sister [E.D.] continues to have regular consistent and defined visitation with her Father, [J.D.]the man [A.H.] identified as her own father until she got a `New Father' when [J.S.] remarried." Id.
If the best interests of the child are to have any meaning in this situation, and if the law is to bear any resemblance to logic, then the trial court's order should be affirmed. The majority reluctantly concludes that it may not, holding that Indiana Code Section 31-19-16-2 is "the exclusive means by which a birth parent [may] acquire postadoption visitation rights." Op. at 1111 (citing In re Visitation of A.R., 723 N.E.2d at 479). I respectfully disagree with my colleagues' reliance on A.R., in which the court stated that it
[did] not believe that the legislature intended that a birth parent's failure to comply with Ind.Code § 31-19-16-2, resulting in the forfeiture of his or her newly-created right to post-adoption contact, should subsequently act as a means for that birth parent, under the guise of a non-parent third party, to circumvent the statute's requirements.
723 N.E.2d at 479. In my view, this statement casts unwarranted aspersions on devoted biological parents like J.D. and fails to anticipate scenarios like the instant case, in which the birth father had been assured of postadoption contact with his child, married and resided with the child's birth mother for several years, fathered another infant with the child's birth mother, and even petitioned to the adopt the child. Given the infinite variety of fact situations that arise in the family law context, I believe that trial courts should be given sufficient flexibility to ensure that the best interests of the child are served in every case.
Unfortunately, I do not believe that such flexibility currently exists in this case. I must reluctantly concur in the majority's reversal of the trial court's order, believing that it is compelled by our supreme court's decision in In re Paternity of K.I., 903 N.E.2d 453 (Ind.2009). See Garry v. State, 502 N.E.2d 497, 499 (Ind.Ct.App. 1986) ("[W]e are an intermediate appellate court and, as such, we are bound to follow the rulings of our supreme court."). In K.I., our supreme court stated that a person's de facto custodian status "bears only on the question of custody" and that
[t]he apparent intent of the de facto custodian statute is to clarify that a third party may have standing in certain custody proceedings, and that it may be in a child's best interests to be placed in that party's custody. The statute is silent on the question of visitation. In a modification proceeding, once the trial court determines that it is in the child's best interest that custody be granted to the natural parent, we must look elsewhere for guidance on whether and to what extent a third party may be granted visitation.
Id. at 461-62 (citation omitted).
This case illustrates the inequity of carrying K.I.'s holding to its illogical conclusion. Here, J.D. is not seeking custody of A.H. pursuant to any of the de facto custodian statutes, although he could have done so pursuant to Indiana Code Section 31-17-2-3.[3] Instead, he is seeking only visitation, *1113 one of the incidents of custodianship, which is much less intrusive. Pursuant to the dictates of K.I., we "must look elsewhere for guidance on whether and to what extent [J.D.] may be granted visitation." Id. at 462. Try as I might, I have found no basis for granting J.D. visitation under Indiana law.[4]
This makes no sense. J.D. should not be placed in an all-or-nothing position based on circumstances almost entirely beyond his control. Why should trial courts have the legal authority in situations such as this to grant a birth parent custody but not any form of visitation? The prospect of denying J.D.'s petition to establish visitation with A.H. is especially troubling, given that he is entitled to visitation with her sister, E.D. As the trial court correctly observed, preserving the status quo cannot be in A.H.'s best interests, and it will almost certainly have a negative impact on the relationship between A.H. and E.D. Sometimes, when we must write an opinion using initials instead of names, the impersonality tends to diminish the very real human drama created by our decision. Today we are forced to separate two young sisters on alternate weekends for no logical reason that I can discern. I believe that our legislature should review Indiana's visitation statutes and that our supreme court should reconsider its pronouncements in K.I. so that we may avoid equally unjust results in future cases.
KIRSCH, J., concurs.
NOTES
[1] In certain cases, a third party non-parent is eligible for visitation upon demonstrating the existence of a custodial and parental relationship and that visitation would be in the child's best interest. Worrell v. Elkhart County Office of Family and Children, 704 N.E.2d 1027, 1028 (Ind.1998) (citing Collins v. Gilbreath, 403 N.E.2d 921, 923-24 (Ind.Ct.App.1980)).
[2] The mother in A.R. was initially awarded custody of her then six-year-old child following dissolution proceedings with the child's father. A.R., 723 N.E.2d at 478. Approximately two years later, the child's father was awarded custody, and the mother consented to the father's new wife's adoption of the child. Id. Following the adoption proceedings, the mother was permitted at least once-per-month visitation for approximately nine months, at which point she was denied contact. Id.
[3] See Ind.Code § 31-17-2-3 ("A child custody proceeding is commenced in the court by: (1) a parent by filing a petition under IC XX-XX-X-X, IC XX-XX-X-X, or IC XX-XX-X-X; or (2) a person other than a parent by filing a petition seeking a determination of custody of the child."); see also Ind.Code § 31-17-2-8 ("The court shall determine custody and enter a custody order in accordance with the best interests of the child.... The court shall consider all relevant factors, including the following:... (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter."); Ind.Code § 31-17-2-8.5 ("(a) This section applies only if the court finds by clear and convincing evidence that the child has been cared for by a de facto custodian. (b) In addition to the factors listed in section 8 of this chapter, the court shall consider the following factors in determining custody: (1) The wishes of the child's de facto custodian. (2) The extent to which the child has been cared for, nurtured, and supported by the de facto custodian. (3) The intent of the child's parent in placing the child with the de facto custodian. (4) The circumstances under which the child was allowed to remain in the custody of the de facto custodian.... (c) If a court determines that a child is in the custody of a de facto custodian, the court shall make the de facto custodian a party to the proceeding. (d) The court shall award custody of the child to the child's de facto custodian if the court determines that it is in the best interests of the child. (e) If the court awards custody of the child to the child's de facto custodian, the de facto custodian is considered to have legal custody of the child under Indiana law."); Ind.Code § 31-17-2-13 ("The court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child.").
[4] I agree with the maternal grandparents that the K.I. court "tacitly abrogated" our holding in Collins v. Gilbreath, 403 N.E.2d 921, on which the trial court partly relied in granting J.D.'s petition to establish visitation. Appellee's Br. at 20. That said, I believe that they improperly exalt form over substance in arguing that the trial court lacked authority to adjudicate J.D.'s petition to establish visitation because A.H. was not a child born to his marriage with J.S.