**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 30 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

ATTORNEY FOR APPELLEE:

**KIMBERLY J. BACON**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFERY ALHOLM, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 48A05-1109-DR-466 |
| | ) | |
| REBECCA (ALHOLM) ALLEN, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David Happe, Special Judge
Cause No. 48D04-1102-DR-63

**July 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Jeffery J. Alholm[1] ("Father") appeals the post-dissolution order that modified child custody and parenting time, found Father in contempt of court, and ordered him to pay attorney's fees to Rebecca (Alholm) Allen ("Mother"). Father presents three issues for review, which we restate as:

1.  Whether the post-dissolution court erred when it modified custody.

2.  Whether the post-dissolution court erred when it modified parenting time.

3.  Whether the post-dissolution court erred when it ordered Father to pay $18,500 of Mother's attorney's fees.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Father and Mother were married on October 5, 2003, and have one child, T.A., born January 12, 2005. Father initiated dissolution proceedings on March 3, 2005. The parties entered into a Partial Mediated Agreement setting out Father's parenting time with the child and awarding joint legal custody of T.A. to the parties. The dissolution court approved the agreement on May 1, 2006. In part that agreement set out Father's parenting time and appointed a Level II Parent Coordinator. On June 29, 2006, the dissolution court entered a decree that incorporated the Partial Mediated Agreement, distributed the marital property and dissolved the parties' marriage ("Decree").[2]

---

[1] Father's first name is spelled in one of two ways throughout the record on appeal: Jeffery and Jeffrey. We use the spelling used by Father in his pro se Notice of Appeal.

[2] On appeal, this court affirmed the Decree regarding parenting time, the property distribution, and the order for the payment of attorney's fees in the Decree. Alholm v. Alholm, No. 48A02-0608-CV-644 (Ind. Ct. App. July 18, 2007).

Since the entry of the Decree, the parties have relentlessly litigated issues regarding custody, parenting time, child support, attorney's fees, and contempt citations.[3] In January 2007, the dissolution court issued an order requiring that: (1) Father maintain a life insurance policy owned by Mother; (2) Father reimburse Mother for past premiums; (3) Mother name the child as the beneficiary of that policy; and (4) Father pay $2000 for Mother's appellate attorney's fees. The order also appointed a Level III parenting coordinator for the parties. The post-dissolution court subsequently modified Father's parenting time based on a binding recommendation filed by the parenting coordinator. On appeal, this court affirmed the order as to the life insurance and appellate attorney's fees issues but reversed the limitation on Father's parenting time. Alholm v. Alholm, No. 48A02-0707-CR-598 (Ind. Ct. App. Dec. 31, 2007).

On May 7, 2009, Father filed a petition for a Trial Rule 35 evaluation, and the post-dissolution court ordered the parties to be evaluated by Dr. Bart Ferraro at Father's expense. Subsequently, on October 7, 2010, the court entered an order ("October 7 Order") following a hearing on multiple issues. In relevant part, the October 7 Order found Father to be in arrears $2870 for child support; ordered him to pay $750 toward Mother's attorney's fees; dismissed Father's petition for modification for failure to appear at the hearing;[4] and ordered parenting time pursuant to the Indiana Parenting Time Guidelines ("the Guidelines") for in-state parents.

---

[3] The procedural history of this case is lengthy and convoluted, partly due to the litigiousness in this case. We discuss only the pleadings and orders relevant to disposition of this appeal in our decision.

[4] The parties do not indicate where in the record to find Father's motion for modification or explain the modification he requested.

3

On November 9, Mother filed a petition for rule to show cause why Father should not be found in contempt for his continued failure to pay child support. On December 8 she filed a petition for attorney's fees incurred due to Father's motion to modify custody, which had been dismissed October 7 due to his failure to appear at the hearing. On January 12, 2011, Mother filed a petition for contempt citation for Father's failure to strike from a panel of proposed special judges. Mother then filed a petition for rule to show cause why Father should not be found in contempt for failing to maintain life insurance as ordered and for violation of the parenting time guidelines and relocation statute. And on April 25 Mother filed a motion to modify custody and parenting time.

On May 12 the post-dissolution court held a hearing on "all pending matters" but took Mother's request for change of custody and parenting time under advisement, resetting those issues for hearing on July 7. On June 15, the post-dissolution court entered an order ("June 15 Order"), in part finding Father in contempt for failure to pay child support, for failure to reimburse Mother for life insurance, and for violation of the parenting time guidelines and relocation statute. And on June 21, the court held a hearing on Mother's petition for rule to show cause and motion to compel discovery responses, for sanctions, and for attorney's fees. The post-dissolution court found Father in contempt for failing to respond to discovery requests by the date ordered. The court also set the determination of the sanction, as well as Mother's pending attorney's fee request and petition to modify custody and parenting time for hearing on July 7.

Finally, the post-dissolution court held a hearing on July 7 and 8. Father appeared pro se, and Mother appeared in person and by counsel. After taking the matter under

4

advisement, the post-dissolution court issued its findings of fact and conclusions thereon ("August Order"), modifying custody and parenting time, finding Father in contempt, and awarding attorney's fees to Mother. Father now appeals.

## DISCUSSION AND DECISION

### Standard of Review

Where, as here, a trial court has entered findings and conclusions sua sponte,

> the specific findings control only as to the issues they cover, while a general judgment standard applies to any issues upon which the court has not found. Harris v. Harris, 800 N.E.2d 930, 934 (Ind. Ct. App. 2003), trans. denied. Thus, in reviewing this judgment, we must apply a two-tiered standard. Id. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. Id. In deference to the trial court's proximity to the issues, we will reverse a judgment only when it is shown to be clearly erroneous. Id. A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. Id. In determining the validity of the findings or judgment, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom, and we will not reweigh the evidence or assess the credibility of witnesses. Id. However, although we defer substantially to findings of fact, we do not do so to conclusions of law. Id. We evaluate questions of law de novo and owe no deference to a trial court's determinations of such questions. Id.

J.S. v. J.D., 941 N.E.2d 1107, 1109-10 (Ind. Ct. App. 2011), trans. denied.

Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011). Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children. Id.

Here, again, Father presents three issues for review, which we restate as challenges to the three separate directives in the August Order. We consider Father's challenge to each directive in turn.

**Issue One: Modification of Custody**

Father contends that the post-dissolution court erred when it modified the Decree by awarding sole legal and physical custody to Mother. A court may modify a child custody order if it finds that the modification is in the best interests of the child and that there has been a substantial change in one or more statutory factors in Indiana Code Section 31-17-2-8. Ind. Code § 31-17-2-21. The court must consider the following factors when determining whether to modify a custody order:

(1)     The age and sex of the child.
(2)     The wishes of the child's parent or parents.
(3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4)     The interaction and interrelationship of the child with:
    (A)     the child's parent or parents;
    (B)     the child's sibling; and
    (C)     any other person who may significantly affect the child's best interests.
(5)     The child's adjustment to the child's:
    (A)     home;
    (B)     school; and
    (C)     community.
(6)     The mental and physical health of all individuals involved.
(7)     Evidence of a pattern of domestic violence by either parent.
(8)     Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in [Indiana Code Section 31-17-2-8.5.]

Ind. Code § 31-17-2-8.

Father first contends that the post-dissolution court's findings are insufficient because they restate testimony but do not clearly articulate that the post-dissolution court

6

determined such testimony to be fact. Father is correct that a court "does not find something to be a fact by merely reciting that a witness testified to X, Y, or Z." Bowyer v. Ind. Dep't of Natural Res., 944 N.E.2d 972, 984 (Ind. Ct. App. 2011) (internal quotation marks and citation omitted). The vast majority of the post-dissolution court's eighty-five paragraphs of "findings" are worded as restatements of the testimony or evidence, such as "Father stated that . . ." or "Mother testified that . . . ." Such "findings" are merely restatements of the evidence but are not findings of fact. Only one of the post-dissolution court's findings denominated as such, finding paragraph 76, qualifies as a finding of fact relevant to the modification of custody.

But the purpose of special findings of fact and conclusions thereon is to provide the reviewing court with the legal basis upon which the decision was reached. Sanders v. Sanders, 452 N.E.2d 1057, 1058 (Ind. Ct. App. 1983). Several of the court's determinations listed as "conclusions" are actually findings of fact. We consider those findings of fact in reviewing the August Order. See id. at 1059 (remand to the trial court with instructions to enter more specific findings and conclusions would be "unnecessary and burdensome, and not in the interest of judicial economy" where findings adequately inform us of the reasoning behind the post-dissolution court's decision).

The post-dissolution court made the following findings, or findings denominated as conclusions, pertaining to the modification of custody:

76. [Father's] erratic behavior escalated over the last year as he has become more hostile. He has brought his older children to record custody exchanges between the parties and has reactivated his civil suit against Mother in Hamilton County, that had been dormant.

\* \* \*

7

CONCLUSIONS OF LAW AND ORDER

5.  There has been on-going conflict between the parties since the divorce was finalized in 2006.

* * *

15. The Court finds Father's behavior avoidant, and his refusal to pay the policy as ordered willful and intentional, and enters a finding of contempt on the issue of payment of life insurance premiums.
16. Father has moved several times since the marriage was dissolved.
17. The Court finds that Father has the ability to work and there is no evidence that he suffers from a disability that would prevent him from working.
18. Father has presented no persuasive evidence that he has actively sought employment or that Mother has impaired his seeking employment.
19. Father chooses to rely on his family and savings to support him, rather than actively seeking employment.
20. Therefore, the court finds that Father is willfully unemployed.
21. [Mother] is the more stable parent and consistent parent[] and should have physical custody of [T.A.].
22. That [sic] the parties' child is bonded with his sibling [Mother's older son] and has a good relationship with him.
23. The parties' child is involved in both school and extracurricular activities and is well grounded in the community where Mother resides.
24. Father has been inconsistent in exercising his parenting time.
25. Based on the parties' inability to effectively communicate, the Court concludes that Mother's concerns about Father's inability to maintain a residence, provide her with a valid address and Father's escalating irresponsible behaviors are reasonable and legitimate.

* * *

27. Father's parenting time has had a detrimental effect on [T.A.], not because Father does not genuinely care about his son, but because of the erratic and unpredictable nature of the parenting time, and the related hostility between the parties.
28. Both parties agree that they are unable to communicate with each other.
29. The Court has concerns about the parties' inability to communicate, which make[s] it difficult to co-parent.

8

30.     [Father] needs intensive individualized therapy to help him deal with his underlying issues of ADHD and depression.
31.     [Mother] needs to increase her therapy [to] ensure that any issues she is addressing do not negatively impact [T.A.].
32.     A parenting coordinator (PC) would also be helpful to the parties and to [T.A.].
33.     The current custody arrangement will have an adverse impact on [T.A.].
34.     There has been a substantial change in that [Father's] behavior has become increasingly unstable and the parties' ability to communicate about parenting matters has become worse since the divorce decree was issued in 2006.
35.     [Mother] has a stable residence, adequate financial resources, and has encouraged [the child] to develop[] good relationships with his brother, his friends, and the community.

Appellant's App. at 25-30. These findings show that the post-dissolution court found a substantial change in circumstances since the entry of the Decree, namely: (1) that Father's "erratic behavior escalated over the last year as he has become more hostile[,]" id. at 25; (2) that, "[b]ased on the parties' inability to communicate, . . . Mother's concerns about Father's inability to maintain a residence, provide her with a valid address and Father's escalating irresponsible behavior are reasonable and legitimate[,]" id. at 29; and (3) that there has been a "substantial change in that [Father's] behavior has become increasingly unstable and the parties' ability to communicate about parenting matters has become worse since the divorce decree was issued in 2006," id. The testimony from Father and Mother supports these findings. And the findings support the post-dissolution court's conclusion that a substantial change in circumstances has occurred with regard to a deterioration in Father's mental health. See Ind. Code § 31-17-2-8(8).

The post-dissolution court's determinations listed above also support its determination that modification of custody is in T.A.'s best interests. The evidence is

9

replete with examples of the parties' inability to communicate, and the post-dissolution court expressed its concern about the resultant effect on their ability to co-parent. "There are times when a breakdown of communication between parents renders joint custody no longer in the best interests of the child." In re A.S. (B.M.S. v. E.M.), 948 N.E.2d 380, 387 (Ind. Ct. App. 2011). Such is the case here. The evidence supports the post-dissolution court's conclusion that modification of sole physical and legal custody to Mother is in the child's best interests.

Still, Father contends that the modification was clearly erroneous. In support, he challenges the findings in paragraphs 26 and 70. But our decision does not rely on those paragraphs. Father further contends that the August Order "makes no mention of the mother taking the Fifth [at the modification hearing] let alone drawing an adverse inference against her." Appellant's Brief at 20. Father cites numerous cases from foreign jurisdictions in support of his contention that the post-dissolution court could have drawn an adverse inference from Mother's assertion of her Fifth Amendment privilege against self-incrimination. He also cites a single Indiana case, and he is correct that "the privilege against self-incrimination does not prohibit the trier of fact in a civil case from drawing adverse inferences from a witness' refusal to testify." Weinberger v. Boyer, 956 N.E.2d 1095, 1107 (Ind. Ct. App. 2011), trans. denied. But a trial court is not required to draw that negative inference. Id. In essence, Father asks us to re-weigh the evidence, which we will not do. J.S., 941 N.E.2d at 1110.

The evidence supports the post-dissolution court's finding that Father's behavior has become increasingly erratic and more hostile since the dissolution and that the parties

are unable to communicate, which affects their ability to co-parent. Those findings support the court's conclusion that it is in the child's best interest for Mother to have sole legal and physical custody of the child. Father has not shown that the court erred when it modified custody.

## Issue Two:  Modification of Parenting Time

Father next challenges the post-dissolution court's modification of his parenting time with T.A. A court may modify an order granting or denying visitation rights whenever modification would serve the child's best interests. Ind. Code § 31-17-4-2. Courts shall not, however, restrict a parent's visitation rights unless the court finds that the visitation might endanger the child's physical health or significantly impair the child's emotional development. Ind. Code § 31-14-4-1. That requires a court to make a specific finding "of physical endangerment or emotional impairment prior to placing a restriction on the noncustodial parent's visitation." Ind. Code § 31-14-14-1(a). "A party who seeks to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction." Arms v. Arms, 803 N.E.2d 1201, 1212 (Ind. Ct. App. 2004) (citing Farrell v. Littell, 790 N.E.2d 612, 616 (Ind. Ct. App. 2003)).

The post-dissolution court's findings and conclusions regarding custody, quoted above, are equally applicable to its modification of Father's parenting time. Again, the court found that Father's "erratic behavior escalated over the last year as he has become more hostile[]" and that "[t]here has been on-going conflict between the parties since the

11

divorce was finalized in 2006[.]" Appellant's App. at 25, 27. In addition, the post-dissolution court made the following findings relevant to visitation:[5]

> 16.    Father has moved several times since the marriage was dissolved.
>
> * * *
>
> 36.    The Court finds that it is not in [T.A.'s] best interests to continue with the existing parenting time order.
>
> * * *
>
> 43.    Due to the instability in Father's life due to his lack of regular employment or daily routine, numerous lawsuits, and Father's own report of inappropriate conduct involving [T.A.] while at Father's residence, parenting time in Kansas would be detrimental to [T.A.'s] emotional and physical health, and academic and social development.

Id. at 28, 30-31. As a result, the post-dissolution court limited Father's parenting time to supervised visitation for one hour per week "[u]nless and until" (1) "Father is actively participating in therapy as ordered" and (2) "a parenting coordinator has accepted appointment and is available to facilitate communication between the parties." Id. at 32. The court further limited Father's visitation as follows:

> 45.    Unless the Court grants specific permission or unless the parties agree otherwise:
> a.    Father shall not take [T.A.] out of the State of Indiana.
> b.    Father shall not exercise parenting time, including summer parenting time[,] for more than four consecutive days.
> c.    Father may continue to have phone or electronic communication with [T.A.] that is reasonable in duration and frequency. . . .

Id.

---

[5] Again, these findings are denominated as conclusions by the post-dissolution court. But they are actually findings of ultimate fact, and we treat them as such.

We initially note that Father has not set out the standard for review of a modification of parenting time. Further, his argument that the modification is erroneous is limited, again, to challenging only two findings by the post-dissolution court, findings in paragraphs 26 and 70. But, as in Issue One above, we do not rely on either of those paragraphs to support the modification of visitation. Father also takes issue with the order that he participate in weekly individual psychotherapy. Specifically, he contends that Dr. Ferraro "did not request the authority to recommend a Kansas therapist," that Dr. Ferraro does not know any Kansas therapists, and, therefore, that the order "in effect requires the father to travel from his home in Kansas to Indiana on a weekly basis. That is impractical due to the cost involved." Appellant's Brief at 20. But having Dr. Ferraro interview and approve a Kansas therapist is not an onerous burden, regardless of whether that is the course Dr. Ferraro requested in his testimony. Moreover, Father did not lodge a similar challenge to the order requiring weekly family therapy in Indiana.

In any event, the evidence supports the findings quoted above regarding visitation. Significantly, the court found that Father's behavior has become increasingly erratic and hostile, that Father lacks stability in his daily life, that continuing the previous parenting time order was not in the child's best interests, and that visitation in Kansas would be detrimental to the child's emotional and physical health and academic and social development. Father has not shown that the evidence does not support the findings or that the findings do not support the post-dissolution court's modification of his parenting time.[6] Thus, Father's contentions regarding the modification of parenting time must fail.

---

[6] To the extent Father reasserts his argument that the post-dissolution court should have considered Mother's assertion of her Fifth Amendment right against self-incrimination in determining the

**Issue Three:  Attorney's Fees**

Finally, Father contends that the post-dissolution court erred when it ordered him

to pay $18,500 of Mother's attorney's fees.  We have previously explained that,

> [i]n post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees.  The trial court has broad discretion in awarding attorney's fees.  Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court.  In assessing attorney's fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award.  In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration.  Further, "the trial court need not give its reasons for its decision to award attorney's fees."

Bessolo v. Rosario, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012) (citations omitted).

The post-dissolution court made the following findings that are relevant to the

attorney's fee award in favor of Mother:

41.   . . . The Court finds that [Father] failed to meet his discovery obligations by making timely and diligent search for the requested information including information held by his attorneys, accountants or other agents.

42.   [Father] alleged that this information existed on a CD that he still had in his possession, However, after being given an opportunity to retrieve said information, [Father] was unable to provide evidence or testimony as to when the information was turned over to his prior counsel.

* * *

45.   [After Father's prior counsel withdrew his representation, Father] did not make any efforts to contact [prior counsel] to determine if there were any interim court dates.

46.   [Father] has hired and dismissed a large number of attorneys within the last few years in Kansas and in Indiana.

---

parenting time modification, again, the post-dissolution court was not required to draw that negative inference, see Weinberger, 956 N.E.2d at 1107, and we will not re-weigh the evidence, J.S., 941 N.E.2d at 1110.

14

47.     He acknowledged that he did not always pay the attorneys when they were retained and denied that the attorneys withdrew due to any fault of his for failure to communicate.

* * *

53.     [Father] was unable to provide documentation of his attempts to find employment or his inability to work.

* * *

55.     Furthermore, he had been the CEO of several companies and the owner of seven patents.

* * *

58.     He was unable to produce any evidence that [Mother] had authored [defamatory letters that caused tortuous interference with his business relationships regarding his search for work] or that the letters continued beyond 2007.

59.     In May 2008, [Father] received a severance packaged that totaled over $400,000.00

60.     He spent all of these funds, largely on attorneys and expenses.

61.     During this time he did not pay his taxes or other accumulating debt.

62.     . . . [Father] provided no evidence [that he had filed bankruptcy].

* * *

64.     On May 12, 2011, [Father] by his counsel informed the Kansas court that he was scheduled for court in Indiana.

65.     On the same date in Indiana, [Father] by his counsel alleged he was unable to appear due to his [f]ather's cancer surgery in the State of Kansas.

* * *

85.     [Mother] has incurred over $20,000.00 with present counsel alone not including the fees for the most recent two-day trial. She has also paid $3,000.00 as [a] witness fee to secure Dr. [Bart] Ferraro's presence at this trial.

Appellant's App. at 22-26. The court then made the following findings and conclusions thereon:

15

6. Father has failed to appear for the last two scheduled Court hearings in October 2010 and May 2011.

\* \* \*

8. Father is not current in his support[] and is making payments in an untimely manner causing an undue hardship on the parties' child because Mother cannot plan for the child's expenses.

\* \* \*

10. Father has retained multiple attorneys within the last four years in Kansas and Indiana.
11. Father is able to reimburse [Mother] for the [life] insurance premiums [that secure his child support obligation] and pay support in a timely manner.
12. Father is found in contempt for willful and intentional failure to pay child support in a consistent and timely manner as ordered.
13. The court took judicial notice of [its] file and testimony at past hearings that Mother made three requests for reimbursement of the life insurance premiums. The requests were made by e-mail . . . . A fourth request was made by certified mail to his Carmel address which was not picked up from the post office.
14. On June 15, 2011, this Court issued [its] order for Father to reimburse Mother within five days of this order for her payment of the life insurance premiums.
15. The Court finds Father's behavior avoidant[] and his refusal to pay the policy [premiums] as ordered willful and intentional[] and enters a finding of contempt on the issue of payment of the life insurance premiums.
16. Father has moved several times since the marriage dissolved.
17. The Court finds that Father has the ability to work and there is no evidence that he suffers from a disability that would prevent him from working.
18. Father has presented no persuasive evidence that he has actively sought employment or that Mother has impaired his seeking employment.
19. Father chooses to rely on his family and savings to support him rather than actively seeking employment.
20. Therefore, the court finds that Father is willfully unemployed.

\* \* \*

50. Mother has been represented throughout the pendency of these proceedings by Kimberly J. Bacon, at the rate of $185.00 per hour.

51. Mother has incurred over $20,000.00 in attorney's fees in her effort to obtain child support and benefits for her child.

52. Father has employed five attorneys (2009-2011) in Indiana alone. Father is in a better position to contribute to attorney fees which have been incurred and he should be responsible for paying a portion of Mother's attorney's fees for the following reasons:

    a. He has more income and has the potential to earn more income than Mother.

    b. He has been found to be in contempt for willfully failing to pay child support timely.

    c. He has been found to be in contempt for willfully failing to pay life insurance premium reimbursements to Mother for the preservation of the child support obligation for [the child] should Father pass away.

    d. He has been found to be in contempt of Court for willful failure to abide by the Court's order to respond to discovery.

    e. He has failed to appear, after having been ordered to do so.

Id. at 27-28, 34-35. The court then ordered Father to pay $18,500 to Mother for attorney's fees and instructed that that amount was non-dischargeable in bankruptcy because it was "incurred in obtaining support for the parties' child." Id. at 35.

Father asserts several errors regarding the award of attorney's fees in favor of Mother. First, he contends that the billing statements admitted into evidence at the hearing show duplicate billing and that the fee award duplicates a previous fee award in favor of Mother in the amount of $750 as a sanction for contempt. In support Father points to the billing statements at issue. But Mother had incurred more than $20,000 in fees in the past year plus additional fees for a two-day hearing. The post-dissolution court awarded her only $18,500. Father provides no calculation to show that Mother was actually awarded duplicate fees. Father's arguments are without merit.

17

Next, Father contends that Mother failed to comply with a prior order when she filed multiple petitions seeking contempt citations without first mediating those issues; that the fee award includes a March 31, 2010, expense for a contempt proceeding that sought enforcement of a "nonexistent order[,]" Appellant's Brief at 15; and that Mother should not have been awarded fees for contempt for Father's failure to strike from a panel during the change of venue process. But, again, Father has not shown any computation of how the court arrived at the $18,500 fee figure, nor has he pointed to evidence in the record to show that part of that amount is attributable to fees for the incurred in seeking contempt citations. And although the post-dissolution court was not required to state the reason for the fee award, the post-dissolution court did so here. The fee award was based in large part on misconduct by Father (other than the contempt issues listed above), which, in turn, was the reason the parties were in court again. Father has not shown that the fee award is clearly against the logic and effect of the facts and circumstances before the court. See Bessolo, 966 N.E.2d at 733.

Father asserts that the fee award was erroneous because the billing statement contains a blatant error, assessing $1868.50 in fees for 1.1 hours of work at a rate of $185 per hour. The error is indeed obvious. He also argues that there was no evidence that the fee award was reasonable. Indiana's Rules of Professional Conduct provide guidance as to factors to be considered in determining the reasonableness of attorney's fees. Benaugh v. Garner, 876 N.E.2d 344, 348 (Ind. Ct. App. 2007). Specifically, we look to Professional Conduct Rule 1.5(a), which lists the following non-exclusive factors to be considered:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

Father contends that "simply stating what he has been billed by an attorney is insufficient to uphold an award of fees." Appellant's Brief at 16.

Father is correct that evidence of the fee award's reasonableness is required in this case. But the record is not devoid of evidence of many of the factors listed in Professional Rule 1.5(a). Specifically, Mother admitted into evidence billings from her attorney showing the time and labor required in this case (Rule 1.5(a)(1)); Mother testified that she had been billed more than $20,000 in fees and that she had incurred additional fees for a two-day hearing (Rule 1.5(a)(4)); the pleadings filed, prior hearings, and prior orders entered by the post-dissolution court show the "result[s] obtained" to date (Rule 1.5(a)(4)); and Mother had had the same counsel representing her in the post-dissolution action for at least one year (Rule 1.5(a)(5)). And, again, Professional Conduct Rule 1.5(a) provides a non-exhaustive list of factors to be considered in determining the reasonableness of attorney's fees. Here, other factors are relevant, namely: Father had employed five attorneys between 2009 and 2011 in Indiana alone; Father is in a better position to contribute to attorney's fees; Mother incurred the fees in part in order to obtain child support and benefits for the child; the Chronological Case

19

Summary shows that this has been a highly litigious case; Father obtained a $400,000 severance package in 2008 and has spent that sum on attorney's fees and expenses while willfully unemployed; and the trial court awarded Mother only $18,500 for attorney's fees although she had incurred more than $20,000 in fees plus an additional sum for her attorney's services in a two-day hearing.

Except as we have discussed and rejected above, Father does not challenge the factual findings in support of the attorney's fee award. He has not shown that the evidence does not support the findings or that the findings do not support the post-dissolution court's award of attorney's fees. Nor has he demonstrated that the $18,500 award, less than the amount Mother incurred, was unreasonable. Thus, Father has not shown that the trial court erred in awarding attorney's fees to Mother.

## Conclusion

Father has not shown that the evidence does not support the post-dissolution court's findings that Father's behavior has become increasingly erratic and more hostile since the dissolution and that the parties are unable to communicate, which affects their ability to co-parent. Father challenges only two findings by the post-dissolution court, but we do not rely on those findings. The remaining findings relevant to custody support the court's conclusion that it is in the child's best interest for Mother to have sole legal and physical custody of the child.

Father also has not shown that the evidence does not support the post-dissolution court's findings regarding modification of his parenting time. Father again challenged only the same two findings he challenged with regard to custody. Again, we do not rely

on those findings in support of the August Order. Finally, Father has not shown that the award in favor of Mother of $18,500 for attorney's fees is clearly against the logic and circumstances of the facts of this case in light of the facts that Mother has spent more than $20,000 in fees with her current attorney and the fees were incurred in part to obtain child support and life insurance premium reimbursements from Father. In sum, Father has not shown that the post-dissolution court erred, and we affirm the August Order.

Affirmed.

RILEY, J., and VAIDIK, J., concur.