## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 20 2015, 10:54 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Amanda O. Blackketter
Blackketter Law, LLC
Shelbyville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re: the adoption of A.A., <br><br> A.A. <br> *Appellant-Defendant,* <br><br> v. <br><br> D.J., <br> *Appellee-Plaintiff.* | July 20, 2015 <br><br> Court of Appeals Case No. 73A05-1411-AD-509 <br><br> Appeal from the Shelby Superior Court <br><br> Lower Court Cause No. 73D01-1405-AD-23 <br><br> The Honorable Jack A. Tandy, Judge |

**Pyle, Judge.**

## Statement of the Case

[1] A.A. ("Father") appeals the trial court's order allowing D.J.'s ("Stepfather") adoption petition regarding Father's minor son, A.A. (Child), to proceed without his consent. Specifically, Father claims that the trial court's judgment

was clearly erroneous because the factual findings show that he had significant communication with Child. After reviewing the trial court's order, we agree with Father that the finding of facts do not support the specific judgment as entered by the trial court. Because the trial court's order only dispensed with Father's consent under INDIANA CODE §31-19-9-8(a)(2)(A), we reverse the trial court's order and remand for further proceedings.

We reverse and remand.

## Issue

Whether the trial court erred in allowing the adoption of Child to proceed without Father's consent.

## Facts

Father and C.J. ("Mother") dated for approximately two years before Child was born in December of 2003. Father served in the military and was deployed to Iraq when Child was born. Upon his return, Father and Mother's relationship worsened, and they separated.

Through an agreed entry, the Shelby County Superior Court established Father's paternity on October 17, 2005. The court awarded joint legal custody of Child to Father and Mother, with Mother retaining primary physical custody. The court's order also established a visitation schedule for Father to be with Child on alternate weekends, two weeks in the summer, and on certain holidays.

Mother met Stepfather shortly thereafter, and they married in July of 2010. Stepfather bonded with Child and served as a father-figure, participating with him in his Cub Scout group, helping him with his homework, attending parent/teacher conferences, and taking him to doctor appointments when Mother could not. Stepfather would also listen to audiobooks and talk with Child about his day before going to bed.

On January 27, 2012, Mother sought to modify custody, parenting time, and child support for Child. The trial court appointed a special advocate ("CASA") on April 9, 2012, and she filed a report on October 31, 2012. The CASA report detailed instances of Child using curse words and making racially-offensive remarks after returning from visits with Father. The report specifically mentioned Child "saying that he hates black people, his friends, and his family." (Stepfather's Ex. 1 at 2). In addition, Child's teachers notified Mother of behavioral problems they experienced with Child. The behavioral problems typically occurred the week following visits with Father.

The trial court held a hearing on Mother's motion to modify custody, parenting time, and child support on December 27, 2012. On the next day, the trial court issued an order awarding sole legal custody to Mother. The trial court also decreased Father's visitation to one two-hour visit per week supervised by a third party, and adjusted his child support payment to $52 per week. The trial court modified custody and parenting time because:

> Father has not been a consistent and positive parent for [Child]. [Father] has been convicted of various crimes and served time in

prison, on work release and on house arrest. He has been a negative factor at times with [Child], suggesting that women are to be physically struck and making derogatory comments about people of color. This is particularly upsetting to [Child] since his stepfather is African[-]American.

(Stepfather's Ex. 6 at 2). The trial court also continued an agreed pendent lite order admonishing everyone to "refrain from making any racially derogatory comments, language, actions, or other inappropriate communication in the child's presence." (Stepfather's Ex. 6 at pg. 1). Father's supervised visits with Child began in April of 2013.

[8] Father participated in supervised visits through Gibault Children's Services ("Gibault"). During these visits, Child was always happy to see Father. The reports from Gibault showed that Father was engaged and affectionate with Child. However, during their visits, Father continued to make disparaging remarks about Mother and referred to Stepfather as "Buckwheat."[1] This behavior culminated on September 25, 2013, when Gibault workers terminated Father's last visit with Child early because of Father's continued discussion of inappropriate topics. Specifically, Father told Child that day would be his last visit because of finances and that he needed Child's address because he would

---

[1] "Buckwheat," in this context, is a reference to a character in the short film series, OUR GANG (Hal Roach Studios 1922), later syndicated on television as *The Little Rascals*. The character "Buckwheat" is a picaninny, which is a caricature of African-American children dating back to Harriet Beecher Stowe's *Uncle Tom's Cabin*. "Picaninnies had bulging eyes, unkempt hair, red lips, and wide mouths into which they stuffed huge slices of watermelon. [T]he term picaninny is today rarely used as a racial slur; it has been replaced by the term buckwheat." Dr. David Pilgrim, *The Picaninny Caricature*, JIM CROW MUSEUM OF RACIST MEMORABILIA, www.ferris.edu/HTMLS/news/jimcrow/picaninny (last visited July 7, 2015).

not be able to communicate with him, except to send a birthday card. Father has had no contact with Child since the September 2013 visit.

[9] On June 9, 2014, Stepfather filed his petition to adopt Child, alleging that Father's consent was not required pursuant to INDIANA CODE § 31-19-9-8 because Father was unfit, had abandoned Child, had only made token efforts to support or communicate with Child, and that Child's best interests would be best served by letting the adoption proceed without Father's permission. In response, Father filed a pro se response and a verified notice to contest the adoption with the assistance of court-appointed counsel.

[10] The trial court held a hearing on October 1, 2014 and entered an order allowing Child's adoption to proceed without Father's consent. Based on the above-mentioned facts, the trial court entered the following conclusions of law:

Conclusions of Law

1) The court has subject matter and personal jurisdiction of the parties.
2) The Court finds by clear and convincing evidence that Father has abandoned [Child] by not having meaningful communication with him for more than one year even though Father had the ability to have contact with him. In addition, Father has made no effort to communicate with [Child] by telephone or correspondence.

WHEREFORE, the Court finds that the adoption matter may proceed without Father's consent pursuant to Indiana Code [§] 31-19-9-8-(a)(2)(A).

(App. 26-27). On October 30, 2014, the trial court clarified that its order was a final judgment, and Father now appeals.

# Decision

Father appeals the trial court's conclusion that he abandoned Child by not having meaningful communication with him without justifiable cause. Specifically, Father claims that the record shows that he did have significant communication with Child. In the alternative, Father asserts justifiable cause existed for any lack of communication with Child.

Upon review of a trial court's ruling in an adoption case, the appellant bears the burden of overcoming the presumption that the trial court's decision is correct. *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009) (citing *In re Adoption of H.N.P.G.*, 878 N.E.2d 900, 903 (Ind. Ct. App. 2008)), *trans. denied*. We will neither reweigh the evidence nor judge the credibility of the witnesses; instead, we will consider the evidence most favorable to the trial court's decision, and the reasonable inferences to be drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Id*. We will not disturb the trial court's ruling unless the evidence leads to one conclusion and the trial court reached an opposite conclusion. *Id.*

Where the trial court enters findings of fact and conclusions of law, we employ our familiar two-tiered standard of review: we must determine whether the evidence supports the findings and whether the findings support the judgment. *Id*. We will not set aside the findings or the judgment unless they are clearly

erroneous. *Id.* Findings of fact are clearly erroneous if the record is devoid of any evidence or reasonable inferences to support them, while a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. *Id.*

[14] Where the trial court, as done here, enters findings of fact and conclusions of law *sua sponte*, the trial court's findings control only as to issues they cover. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). On all other matters, the general-judgment standard applies, and we will affirm on any legal theory supported by the evidence. *Id.* Though we defer substantially to the findings of fact, that same deference is not given to conclusions of law. *J.S. v. J.D.*, 941 N.E.2d 1107, 1110. (Ind. Ct. App. 2011), *trans. denied*. We evaluate questions of law de novo and owe no deference to the trial court's determinations of such questions. *Id.*

[15] Parental consent is generally required to adopt a child in Indiana. *See* IND. CODE § 31-19-9-1. However, consent to adoption is not required from any of the following:

> (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months preceding the date of the filing of the petition.
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

> (B) knowingly fails to provide for the care and
> support of the child when able to do so as
> required by law or judicial decree.
>
> * * * * *
>
> (11) A parent if:
>
> > (A) a petitioner for adoption proves by clear and
> > convincing evidence that the parent is unfit
> > to be a parent; and
> >
> > (B) the best interests of the child sought to be
> > adopted would be served if the court
> > dispensed with the parent's consent.

IND. CODE § 31-19-9-8(a).

[16] Here, the trial court's sole legal conclusion for allowing the adoption to proceed without Father's consent was that he failed without justifiable reason to significantly communicate with Child for at least a year pursuant to INDIANA CODE § 31-19-9-8(a)(2)(A). We find the trial court's conclusion erroneous for two reasons. First, the factual findings do not establish that Stepfather's petition satisfied the one-year threshold required by the statute. Second, we find that there was significant communication between Father and Child.

[17] Concerning the one-year threshold, the trial court found that "Father has not had any communication with [Child] since September 25, 2013." (App. 25). Stepfather filed his petition to adopt Child on June 9, 2014, eight months after Father's last communication with Child in September 2013. In determining whether a parent has failed to communicate significantly with his child for the statutory one-year period, we have previously noted that a "parent's conduct

*after* the petition to adopt was filed is wholly irrelevant." *In re Adoption of S.W.*, 979 N.E.2d 633, 640, n. 3 (Ind. Ct. App. 2012) (internal quotation marks omitted) (emphasis in original).

[18] The reasonable inference from the factual findings is that the trial court used September 25, 2013 as a starting point in satisfying the one-year threshold. However, starting at that time would also include conduct after Stepfather filed the petition to adopt. That conduct, as previously mentioned, is irrelevant. It is clearly erroneous to conclude that Father failed to communicate significantly with Child for at least a year starting on September 25, 2013 up until the time of the trial court's order.

[19] Moreover, even if the trial court considered the relevant time period of June 8, 2013 through June 8, 2014, its conclusion of law is still erroneous because Father had significant communication with Child. The adoption statute does not define "significant." The interpretation of a statute is a pure question of law, which we review de novo. *M.S. v. C.S.*, 938 N.E.2d 278, 282 (Ind.Ct.App.2010). "In construing a statute, our primary goal is to determine and effectuate the legislative intent." *Id.* We give words and phrases their plain and ordinary meaning. *Id.* at 284.

[20] The plain, ordinary meaning of "significant" is "having meaning [or] especially, having or likely to have an influence[], probably caused by something other than mere chance." Merriam–Webster Online Dictionary, available at http://www.merriam-webster.com/significant (last visited July 7, 2015). Here,

the trial court's findings of fact stated, "[Child] was always glad to see his father." (App. 25) Indeed, during visits, Child and Father both said, "I love you" to each other, and Child told Father that "he's the best Dad ever." (Stepfather's Ex. 3) Thus, the reasonable inference is that the visits within the relevant statutory one year period were meaningful to Child. *cf In re Adoption of J.P.*, 713 N.E.2d 873, 876 (Ind. Ct. App. 1999) (Child's reaction to visits from Mother were not favorable, supporting the conclusion that communication was not significant).

[21] Stepfather claims that we cannot consider this evidence because it "is an invitation to consider evidence that does not favor the trial court's judgment." (Stepfather's Br. 7). However, because the trial court entered findings of fact and conclusions of law, we are not prohibited from considering this evidence to determine whether the trial court's judgment is clearly erroneous. *See A.S.*, 912 N.E.2d at 850. Accordingly, Father's visits within the relevant statutory period were significant, and the trial court's conclusion that it could dispense with Father's consent to the adoption based on I.C. 31-19-9-8(a)(2)(A) was clearly erroneous.

[22] The trial court's order only determined whether Father's consent was required for the adoption to proceed because it was asserted that father had no significant communication with the Child. However, there are numerous statutory provisions that permit proceeding with the adoption without Father's consent. Accordingly, we reverse and remand for further proceedings under the

adoption consent statute, particularly whether Father's consent may be dispensed with under I.C. 31-19-9-8(a)(11).

[23]    Reversed and remanded.


Crone, J., and Brown, J., concur.