## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 15 2019, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

L. Katherine Boren
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE

Thomas A. Massey
Massey Law Offices, LLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Zausch,

*Appellant and Cross-Appellee*,

v.

Diana (Zausch) Schnakenburg,

*Appellee and Cross-Appellant*.

February 15, 2019

Court of Appeals Case No. 18A-DR-1380

Appeal from the Vanderburgh Superior Court

The Honorable Leslie C. Shively, Judge

Trial Court Cause No. 82D04-0910-DR-1030

**Brown, Judge.**

William Zausch ("Father") appeals the trial court's order modifying his child support obligation. On cross-appeal, Diana (Zausch) Schnakenburg ("Mother") claims the trial court erred in determining Father's gross income. We affirm.

*Facts and Procedural History*

In November 2010, the trial court entered a final decree dissolving the parties' marriage. The decree provided that Mother would have primary physical custody of the parties' four children and that Father pay weekly child support of $675. It provided that Father is the owner of his interest in Utility Pipe Sales of Indiana, Inc. ("UPSI") and Utility Pipe Sales Co., Inc. ("UPSC"), that he make certain equalization payments to Mother, and that his equalization obligation be secured by a pledge of his stock in UPSI and UPSC.

On June 12, 2015, the court entered an order stating that Father had made a quarterly income tax payment in January 2015 for tax year 2014 based upon his estimate of his income being in excess of $400,000 for 2014; that Father had submitted an affidavit to the court dated February 13, 2015, stating that his total income and distributions for 2014 were $253,000; and finding "Father's income for 2014 to be $410,000 and, therefore, using the income figures for 2012 ($483,479), 2013 ($276,085) and 2014 ($410,000) finds Father's weekly income to be $7,505.00 based upon the 2012, 2013 and 2014 income figures." Appellee's Appendix Volume 2 at 18. The order provided that Father's weekly support obligation for the period of October 4, 2013, through December 26, 2014, was $910; that retroactive support was $15,275; and that support was "set

at $798 per week commencing 1-2-15 based upon the Court's 2-27-15 ruling increasing Father's parenting time." *Id.* at 19.

[4]     On May 17, 2017, Mother filed a petition to modify child support alleging that Father's income had significantly increased since the June 12, 2015 order, that support based on the parties' 2016 income was believed to be approximately $1,500 per week, and that the modification should be made retroactive to the date of the petition. On February 2, 2018, Father filed a petition to modify physical custody requesting that the court grant him shared/joint physical custody. On April 4, 2018, Mother filed a petition requesting that the court increase Father's support obligation and deny his request to modify custody.

[5]     On April 10, 2018, the court held a hearing. Mother presented Father's affidavit stating that his income from all sources in 2014 was $253,598.57, and a financial statement signed by Father on February 2, 2017, indicating that his net worth was $4,186,281. Father agreed that the net worth figure was accurate. His individual tax return for 2014 indicated that he had wages of $132,165, income from partnerships and S corporations of $414,993, and adjusted gross income of $547,158. His 2015 tax return indicated that he had wages of $90,890, income from partnerships and S corporations of $497,340, and adjusted gross income of $589,636. His tax return for 2016 indicated that he had wages of $65,626, income from partnerships and S corporations of $681,467, and adjusted gross income of $747,246. Finally, Father's tax return

for 2017 indicated that he had wages of $63,321, income from partnerships and S corporations of $997,729,[1] and adjusted gross income of $1,054,214.

[6] Father presented a spreadsheet as Exhibit K which was a summary of his income for 2014 through 2017 based on the amounts reported to the IRS and the amounts he actually received from his various companies. For each of the four years, the summary included Father's W-2 income and any income he received from UPSC, UPSI, Indiana Precast, and Top Notch LLC, and for each of the entities provided amounts for his tax liability, distributions, distributions in excess of his tax liability, annual income, gross up per the guidelines,[2] and actual gross income. According to the summary, Father's total actual gross income was $350,826 in 2014, $138,075 in 2015, $311,418 in 2016, and $437,608 in 2017. For the year 2017, the summary provides a total income of $1,061,050, tax liability of $412,145, distributions of $625,483, distributions in excess of tax liability of $243,791, annual income of $364,105, gross up per the guidelines of $385,028, and total actual gross income of $437,608. The spreadsheet also included an actual income average for the three-year period of 2014 through 2016 of $266,773 and for the three-year period of 2015 through 2017 of $295,700. Father's accountant testified, with respect to the income from the companies listed on Father's Exhibit K, that Father paid tax on the

---

[1] Father reported income from UPSC, UPSI, Indiana Precast Inc, and Top Notch, LLC.

[2] Father's accountant indicated that the Indiana Child Support Guidelines consider gross income and that, in the "gross up" column, the distributions in excess of tax liability from each company were "gross[ed] up" using a tax factor taken from the commentary to the Guidelines. Transcript Volume II at 90.

amounts listed and that the amounts represent Father's share of the total income of the listed companies. He testified that the entities are considered flow-through entities for tax purposes, that none of the entities pay tax at the corporate level, and that all the income is summarized and passed through to the shareholders or members.

[7] Following the hearing, the parties submitted proposed orders.[3] Father's proposed order provided that his weekly support obligation would be $577.95 calculated using $5,687 as his weekly gross income. Mother's proposed order provided that Father's 2017 taxable adjusted gross income was $1,054,214 and that, based on his verified financial statements, his net worth increased from nearly $1.8 million in June 2014 to almost $4.2 million in February 2017. A financial statement signed by Father and dated June 9, 2014, indicates that Father's net worth at that time was $1,785,752.

[8] On May 16, 2018, the trial court entered Findings of Fact, Conclusions of Law and Judgment, denying Father's petition to modify physical custody. The court found that Mother has income from her full-time employment as a teacher and

---

[3] On appeal, Father filed a motion to strike arguing in part, with respect to Mother's proposed order and the exhibits attached to it in the appellee's appendix, that there is no indication Mother's proposed order was filed with the trial court, that the proposed order appearing in the appellee's appendix is not file-stamped and does not appear as an entry in the chronological case summary ("CCS"), and that the proposed order is not part of the record or properly cited by Mother. Mother filed a response stating that her April 30, 2018 e-filing of the proposed order was attached and that it is unknown why the e-filing is not reflected in the CCS, and the attached email indicated that the filing was submitted on April 30, 2018, and accepted by the clerk's office on May 1, 2018. Father filed a reply stating that, although the attachments to Mother's response appear to indicate that she attempted to electronically file her proposed order, the fact remains that the proposed order does not appear as a filing in the CCS. By separate order, we deny Father's motion to strike.

two part-time coaching positions, and from serving as a summer camp counselor and has weekly gross income for child support calculation purposes of $541. It found that Father receives W-2 wages as president of UPSC and that he is a minority shareholder of three companies from which he receives distributions: UPSC, of which he owns 23.255% of the shares; UPSI, of which he owns 26.0335% of the shares; and Indiana Precast, Inc., of which he owns 23.6735% of the shares. The court found that Father is also a minority member of Top Notch Holdings, LLC, from which he receives no distributions.

[9] The court accepted the calculation of the actual gross income figure as set forth in Father's Exhibit K as the appropriate figure to utilize in calculating the support obligation. It found that "Father's tax returns and K-1's . . . serve as the basis for Father's Exhibit 'K.'" Appellant's Appendix Volume 2 at 18. The court concluded:

> 4. In determining the Father's weekly child support obligations, the Court shall follow and adhere to the appellate court's holding in *Tebbe v. Tebbe*, 815 N.E.2d 180, 184 (Ind. Ct. App. 2004)[, *reh'g denied*, *trans. denied*]. In *Tebbe*, the appellate court held that: "(1) <u>un</u>disbursed income of a minority shareholder in an S corporation should <u>not</u> be included in child support calculations unless the trial court finds that the corporation is being used to shield income, and (2) pass-through S corporation income that is merely disbursed to offset pass-through shareholder tax liability, and which does not increase the shareholder[']s actual income, should not be included in child support calculations." *Id*. (emphasis added).
>
> 5. Including pass-through income in a child support calculation is against the Indiana Child Support Guidelines, where such income is not disbursed or is disbursed for the purpose to avoid pass-through S corporation tax liability. *Id*.

* * * * *

7. The Court concludes, based upon the uncontroverted evidence supplied by the Father and his CPA tax accountant . . . that any income that was attributable to the Father by any of the companies in which he is a minority shareholder, (namely, Indiana Precast, Top Notch, UPSC, and UPSI) but which was not disbursed to him - as shown on his K-1 statements - shall <u>not</u> be included for purposes of computing child support. *See*, *Tebbe*, *supra*.

8. Furthermore, to the extent that distributions were issued from any of the companies for the purpose of paying Father's pass-through minority shareholder tax liability, those amounts too should not be included for purposes of calculating the Father's child support obligation. *See*, *Tebbe*, *supra*.

9. The gross distributions that have been paid to the Father by any of the four (4) subject companies, over and above the shareholder tax liability for the same, should be included in the Father's income for child support calculation purposes. *Id*.

10. Based on the findings made by the court, the court shall utilize Mother's 2017 income and Father's actual gross income for 2017 as set forth in Father's exhibit "K".

*Id*. at 21-22. The court stated: "Mother's Verified Petition to Modify Child Support is granted. Both Father's income and economic circumstances have significantly improved since the June 12, 2015 order." *Id*. at 23. The court found that Father's weekly gross income is $8,415.15 based on his 2017 actual gross income of $437,608 and that his new child support obligation is $926 per week, which it made retroactive to May 19, 2017, resulting in $6,400 of retroactive child support.

## Discussion

On review, a trial court's calculation of child support is presumptively valid. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015). Upon the review of a modification order, only evidence and reasonable inferences favorable to the judgment are considered. *Id*. The order will be set aside only if clearly erroneous. *Id*. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). We give due regard to the trial court's ability to assess the credibility of witnesses. *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000), *reh'g denied*. We first consider whether the evidence supports the factual findings, and then we consider whether the findings support the judgment. *Id*.

Ind. Code § 31-16-8-1 provides in part:

> (a) Provisions of an order with respect to child support . . . may be modified or revoked.
>
> (b) Except as provided in section 2 of this chapter, and subject to subsection (d), modification may be made only:
>
>> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>>
>> (2) upon a showing that:
>>
>>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[12] Father argues that "[t]he only changed circumstance is [his] increased income, but that change in income resulted in less than a twenty percent increase in [his] support obligation" and that the court's modification was improper under Ind. Code § 31-16-8-1. Appellant's Brief at 10-11. He cites *MacLafferty v. MacLafferty*, 829 N.E.2d 938 (Ind. 2005), and asserts that Mother did not argue and the court did not find that any other factors converged with his increase in income to create a change in circumstances so substantial and continuing as to make the prior order unreasonable. He also argues that the court abused its discretion in making its modification retroactive, there is no indication that he engaged in dilatory conduct, and that the court relied on his 2017 income in modifying support which was not available until the end of 2017 and could not have formed the basis for Mother's initial petition which referenced his 2016 income.

[13] Mother responds that, in modifying Father's support obligation, the court found that both his income and his economic circumstances have significantly improved since the court's previous order and that the court's findings are supported by the increase in Father's income and the increase of his net worth to nearly $4.2 million. She argues that income, net worth, assets, and access to credit are separate relevant factors in determining child support and that Indiana courts have the authority to consider the financial circumstances and

net worth of parents in addition to their incomes in calculating support. She also argues the court did not abuse its discretion in awarding $6,400 in retroactive child support.

Further, Mother argues on cross-appeal that the court erred in determining Father's weekly gross income. Specifically, she argues that Father's 2017 tax return showed an adjusted gross income of $1,054,214, that the court determined Father's 2014 gross income was $410,000, and that it was error for the court to inconsistently and for the first time dramatically reduce Father's income and apply a *Tebbe* reduction. In reply, Father states that the court excluded undisbursed pass-through income and disbursements made solely to offset pass-through tax liabilities in calculating his gross income in accordance with *Tebbe* and that, regardless of whether the prior support orders were based on an accurate calculation of his gross income, the court did not abuse its discretion in accurately calculating his gross income at this time.

A. *Father's Gross Income*

We first address Mother's claim that the trial court erred in determining Father's gross income. Indiana Child Support Guideline 3A(1) provides in part that "weekly gross income" is defined "as actual weekly gross income of the parent if employed to full capacity" and "includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, annuities, capital

gains, . . . gifts, [and] inheritance . . . ." In *Tebbe*, this court observed that Indiana's child support guidelines are based upon the premise that children should receive the same portion of parental income that they would have received had their parents' marriage remained intact and held: "Disregarding undisbursed pass-through income or a disbursement that *only* compensates a shareholder for the consequences of pass-through S-corporation tax liability is consistent with the Guidelines." 815 N.E.2d at 183-184. We further held that "(1) undisbursed pass-through income of a minority shareholder in an S-corporation should not be included in child support calculations unless the trial court finds that the corporation is being used to shield income" and "(2) pass-through S-corporation income that is merely disbursed to offset pass-through shareholder tax liability, and which does not increase the shareholder's actual income, should not be included in child support calculations." *Id*. at 184.

[16] Here, the total "actual gross income" in the spreadsheet admitted as Father's Exhibit K did not include the income attributable to Father due to his interests in the identified companies but not distributed to him or distributions which were made to him to merely offset his tax liability. The trial court heard the testimony of Father's accountant and admitted Father's 2017 tax documents, including Form 1040 and Schedule K-1 for each of the companies, which reflected Father's income and the amounts distributed to him. Based upon the record and in light of *Tebbe*, we do not find persuasive Mother's arguments that the court erred in determining Father's weekly gross income for child support purposes.

B. *Modification*

[17] We next turn to the trial court's modification of Father's support obligation from $798 per week to $926 per week. In *MacLafferty*, the father requested that his support obligation be decreased because the mother had obtained full-time employment and her income had increased. 829 N.E.2d at 939. According to the trial court, the mother's income had increased from $324 per week to $709, and the father's income had increased from $2,287 per week to $2,407. *Id*. The trial court reduced the father's support obligation by fourteen percent. *Id*. The Indiana Supreme Court discussed Ind. Code § 31-16-8-1 and stated:

> In addition to providing a bright-line test for a parent who seeks modification solely on grounds of change in income, it seems to us that, as a practical matter, the Legislature has effectively established a bifurcated standard for modification, Subsection (2) covering situations where a parent seeks modification solely on grounds of change in income and Subsection (1) covering all other situations (including situations alleging a change in income and one or more other changes). It is true that, as a matter of pure logic, a parent could seek modification solely on grounds of change in income under Subsection (1)—indeed, Father does so here. But we do not believe that the Legislature would consider a change in circumstances standing alone (i.e., without any other change in circumstances) that would change one parent's child-support payment by less than 20% to be "so substantial and continuing as to make the terms [of the prior order] unreasonable." Indeed, it is hard to see the reason the Legislature would have enacted subsection (2) at all if a parent could receive a modification under Subsection (1) where the only changed circumstance alleged would change one parent's payment by less than 20%.
>
> Nevertheless, we do not hold that a modification may never be made . . . under subsection (1) where the changed circumstance

alleged is a change in one parent's income that only changes one parent's payment by less than 20%. There may be situations where a variety of factors converge to make such a modification permissible under the terms of the statute. While we do not find this case to be such a situation, we do not foreclose such a possibility.

*Id.* at 942. The Court found that, while the mother's weekly income increased by $375 as a result of becoming employed full-time and the father's weekly income increased by $120, the mother's income was still quite modest compared to the father's, and the Court held that the change alleged was not so substantial as to render the terms of the prior order unreasonable. *Id.* The Court further stated that the proposition "that changes in the relative financial resources of both parents alone may be sufficient to modify a child support order," *id.* (citing *Harris v. Harris*, 800 N.E.2d 930, 938 (Ind. Ct. App. 2003), *trans. denied*), is true only when the changes are so substantial and continuing as to render the terms of the prior support order unreasonable. *Id.* at 943.

[18] It is well-established that Indiana courts have the authority to consider the financial circumstances and net worth of parents in addition to their incomes when calculating child support. *Gardner v. Yrttima*, 743 N.E.2d 353, 358 (Ind. Ct. App. 2001) (citing *Garrod v. Garrod*, 655 N.E.2d 336, 338-339 (Ind. 1995) (rejecting the father's claim the trial court unfairly relied on his net worth in figuring support)). In *Gardner*, this Court held that an inheritance may amount to a substantial and continuing change in circumstances sufficient to trigger a modification of a child support order and noted that an inheritance may change a non-custodial parent's ability to pay support or increase the parent's overall

standard of living. 743 N.E.2d at 358-359. *See also Zakrowski v. Zakrowski*, 594 N.E.2d 821, 822-824 (Ind. Ct. App. 1992) (holding trial courts "may properly consider the parents' total financial circumstances, including net worth, access to credit and available financial flexibility" in modifying child support orders); *Merrill v. Merrill*, 587 N.E.2d 188, 190 (Ind. Ct. App. 1992) (holding "[e]vidence of a parent's net worth and assets are relevant subjects of inquiry in a proceeding to establish or modify child support") (citing *Green v. Green*, 447 N.E.2d 605, 609 (Ind. Ct. App. 1983) (holding the financial condition of each parent is a statutory factor which must be considered when awarding child support and evidence of a parent's net worth and assets are relevant subjects of inquiry in a proceeding to establish or modify child support), *reh'g denied*, *trans. denied*); Ind. Code § 31-16-6-1 (relevant factors to consider in ordering child support include the financial resources of the parents).

[19] Unlike *MacLafferty*, where the increases in the parties' incomes did not result in substantial change to their relative financial resources, the evidence in this case demonstrates a substantial and continuing change in the financial resources of the parties relative to each other and supports the court's modification. According to Father's June 2014 financial statement, his net worth at that time was $1,785,752, and the statement included values of $361,836 for his interest in UPSC, $820,908 for his interest in UPSI, and $23,450 for his interest in Top Notch Holdings. According to Father's February 2, 2017 financial statement, his net worth had increased to $4,186,281, and the 2017 statement included values of $948,703 for his interest in UPSC, $2,371,254 for his interest in UPSI,

$229,398 for his interest in Top Notch Holdings, and $711,587 for his interest in Indiana Precast.[4] The court was able to consider the evidence, including Father's tax documents and summary with respect to the income attributable to him as a shareholder and member and the amounts distributed and not distributed to him, in concluding that his economic circumstances had significantly improved since June 2015.

[20] Based upon the record, we conclude that the trial court's modification of Father's weekly child support obligation from $798 to $926 was not clearly erroneous. *See Harris*, 800 N.E.2d at 938 (holding change in the parties' financial situation resulted in substantial and continuous change supporting modification of child support where the father's new compensation package consisted of a base salary of $325,000, monthly car allowance of $750, and potential bonus of $162,500, and father had received a $800,000 settlement from his previous employer); *see also Kirchoff v. Kirchoff*, 619 N.E.2d 592, 595-596 (Ind. Ct. App. 1993) (finding substantial and continuing changed circumstances where the mother had become employed full-time significantly increasing her seasonal income, the father's income had significantly decreased, and only one of three children remained in the mother's custody), *disapproved on other grounds by Merritt v. Merritt*, 693 N.E.2d 1320, 1324 n.4 (Ind. Ct. App. 1998).

---

[4] The 2017 statement also included, under a heading for liabilities, an "[u]nfunded college tuition expense (estimated) per divorce decree" of $500,000.

C. *Arrearage*

The trial court made its modification order retroactive to May 19, 2017, and found Father owes $6,400 of retroactive child support. The trial court has the discretionary power to make a modification for child support relate back as early as the date the petition to modify is filed. *Goodman v. Goodman*, 94 N.E.3d 733, 750 (Ind. Ct. App. 2018), *reh'g denied*, *trans. denied*. The record reveals that Mother filed a petition to modify child support on May 17, 2017, that Father filed a petition to modify custody on February 2, 2018, and that Mother filed a petition requesting that the court modify child support and deny Father's request for custody on April 4, 2018. The parties presented evidence at the April 2018 hearing related to their requests. The court was able to consider evidence of Father's business interests and his income, including his income in 2014 through 2017, the sources of his income, and the change in his income over time. Under the circumstances, we cannot say that the trial court abused its discretion in determining the date the modified support order would take effect and in ordering Father to pay $6,400 in retroactive support.

For the foregoing reasons, we affirm the trial court's ruling.

Affirmed.

Bailey, J., and Bradford, J., concur.